Filed 8/17/18 (unmodified opinion attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| PATRICK LAFFERTY et al.,<br><br>      Plaintiffs and Appellants,<br><br>   v.<br><br>WELLS FARGO BANK, N.A.,<br><br>      Defendant and Appellant. | C080535<br><br>(Super. Ct. Nos. CV030892,<br>STKCVUBC20060013311)<br><br>ORDER MODIFYING OPINION<br>AND DENYING APPELLANTS'<br>PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion filed July 19, 2018 in the above cause is modified as follows:

Add the following footnote to the end of the second full paragraph of part II B.:

As the Laffertys point out in their petition for rehearing, the trial court misspoke when it stated they recovered against Geweke for failure to comply with the CLRA. The record indicates they recovered against Geweke for violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200, et seq.), for money had, and for negligence. The trial

1

court's misstatement does not undermine our conclusion that the Laffertys did not file this action "pursuant to" Civil Code section 1780.

Delete footnote 2 from part IV B.

Delete the second full paragraph from part IV C.

This modification does not change the judgment.

Appellants' petition for rehearing is denied.


_____/s/_____
RAYE, P. J.


_____/s/_____
BUTZ, J.


_____/s/_____
HOCH, J.

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| PATRICK LAFFERTY et al., | |
| Plaintiffs and Appellants, | C080535 |
| v. | (Super. Ct. Nos. CV030892, STKCVUBC20060013311) |
| WELLS FARGO BANK, N.A., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Roger Ross, Judge. Affirmed.

LAW OFFICES OF TIMOTHY D. MURPHY and Timothy D. Murphy for Plaintiffs and Appellants.

SEVERSON & WERSON, Jan T. Chilton and Mark D. Lonergan for Defendant and Appellant.

This is the third appeal that comes to us in this case, which arises out of Patrick and Mary Lafferty's purchase of a defective motor home from Geweke Auto & RV

1

Group (Geweke) with an installment loan funded by Wells Fargo Bank, N.A (Wells Fargo).

In *Lafferty v. Wells Fargo Bank* (2013) 213 Cal.App.4th 545 (*Lafferty I*), this court affirmed in part and reversed in part the action brought by the Laffertys against Wells Fargo. Our disposition in *Lafferty I* awarded costs on appeal to the Laffertys. (*Id.* at p. 573.) On remand after *Lafferty I*, the Laffertys moved for costs and attorney fees. The trial court granted costs in part but denied the Laffertys' request for attorney fees as premature because some causes of action remained to be tried. The Laffertys appealed.

In *Lafferty v. Wells Fargo Bank* (March 26, 2015, C074843) [nonpub. opn.] (*Lafferty II*), this court held the award of costs on appeal did not include an award of attorney fees. (*Lafferty II, supra*, C074843.) *Lafferty II* also held the Laffertys' request for attorney fees was prematurely filed. (*Ibid.*) After issuance of the remittitur in *Lafferty II*, the parties stipulated to a judgment that contained two key components: (1) their agreement the Laffertys had paid $68,000 to Wells Fargo under the loan for the motor home, and (2) Wells Fargo repaid $68,000 to the Laffertys. After entry of the stipulated judgment, the trial court awarded the Laffertys $40,596.93 in prejudgment interest and $8,384.33 in costs. The trial court denied the Laffertys' motion for $1,980,070 in post-trial attorney fees, $464,220 in post-appeal attorney fees, and $16,816.15 in non-statutory costs. Wells Fargo appeals from the award of prejudgment interest and costs. And the Laffertys cross-appeal from the denial of their requests for attorney fees and nonstatutory costs.

The resolution of this appeal and cross-appeal turns on the meaning of title 16, section 433.2 of the Code of Federal Regulations, commonly known as the Holder Rule. The Holder Rule was promulgated by the Federal Trade Commission (FTC) for inclusion in every consumer installment sale contract that is funded by a commercial lender.

2

(*Lafferty I, supra*, 213 Cal.App.4th at p. 550.) In pertinent part, the Holder Rule requires that the following notice be given to consumers:

> "NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." (16 C.F.R. § 433.2.)

On appeal, Wells Fargo contends the second sentence of the Holder Rule limits the Laffertys' recovery, including prejudgment interest and costs, to the $68,000 they actually paid on the loan for the motor home. Thus, Wells Fargo argues for reversal of the award of prejudgment interest and costs awarded to the Laffertys in excess of the $68,000 Wells Fargo repaid to them.

On cross-appeal, the Laffertys argue that in addition to costs and prejudgment interest they were entitled to recover their attorney fees from Wells Fargo. Specifically, they rely on three California fee-shifting statutes. (Civ. Code, §§ 1717 & 1770; Code Civ. Proc., § 1021.5.) In a fallback argument, the Laffertys assert that if the Holder Rule "is applied as Wells Fargo advocates to limit costs, fees, and prejudgment interest," then the rule violates First Amendment, due process, and equal protection guarantees. In another fallback argument, the Laffertys argue the Holder Rule cap in this case amounts to $279,406.87. The Laffertys advance additional, related contentions we need not discuss given the disposition of the appeal and cross-appeal in this case.

We conclude the Laffertys are limited under the plain meaning of the Holder Rule to recovering no more than the $68,000 they paid under terms of the loan with Wells Fargo. Consistent with *Lafferty I*, we continue to "hold—to the extent the Laffertys have causes of action against Geweke that are also valid against Wells Fargo by operation of the Holder Rule—their recovery is limited to the amount they have paid under the installment contract." (213 Cal.App.4th at p. 563.) Consequently, the trial court properly

3

denied the Laffertys' request for attorney fees and nonstatutory costs in excess of their recovery of the amount they actually paid under the loan to Wells Fargo. In holding the Laffertys are limited in their recovery against Wells Fargo, we reject the Laffertys' claims the Holder Rule violates the First Amendment, due process, or equal protection guarantees of the federal Constitution. However, we conclude the trial court did not err in awarding costs of suit and prejudgment interest to the Laffertys. The California statutes providing for costs and prejudgment interest apply to actions as a whole rather than to individual causes of action such as that provided by the Holder Rule.

Accordingly, we affirm the post-judgment orders of the trial court.

BACKGROUND

*Lafferty I*

The background for this case was set forth in *Lafferty I*, where we recounted that "[o]n November 1, 2005, the Laffertys bought a motor home manufactured by Fleetwood Motor Homes (Fleetwood) from Geweke. Pursuant to the terms of the installment contract, the Laffertys agreed to pay a total of $389,929 for the motor home over the course of 239 months. . . . [¶] Geweke assigned the installment contract to Wells Fargo in accordance with the terms of a dealer agreement entered into between Wells Fargo and Geweke." (*Lafferty I, supra*, 213 Cal.App.4th at p. 551, fns. omitted.) The Laffertys experienced repeated problems with electrical and mechanical failures in their motor home. (*Id.* at p. 552.) After repeated failed attempts by Geweke to repair the motor home, the Laffertys left the motor home with Geweke and stopped making payments on the installment contract. (*Id.* at p. 552.) "Wells Fargo took possession of the motor home in accordance with the terms of the installment contract, but took no action to collect any amount of money from the Laffertys. Wells Fargo did report to various consumer credit reporting agencies that the Laffertys had defaulted on their agreement to pay for the motor home." (*Ibid.*)

4

We reversed to allow the Laffertys to pursue causes of action against Wells Fargo under the Holder Rule based on claims they would have had against Geweke pursuant to the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1770 et seq.) and for common law negligence. (*Lafferty I, supra*, 213 Cal.App.4th at p. 550.) We affirmed the trial court's dismissal of the Laffertys' claims for negligent defamation of credit, breach of warranty, breach of contract, breach of the covenant of good faith and fair dealing, violation of the Song–Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), violation of the Tanner Consumer Protection Act (Civ. Code, § 1793.22), unfair business practices, and declaratory and injunctive relief. (*Lafferty I, supra*, at p. 551.) This court emphasized that "the plain meaning of the Holder Rule allows the Laffertys to assert all claims against Wells Fargo they might otherwise have against Geweke. Under the Holder Rule, *however, the Laffertys may recover no more than what they actually paid toward the installment contract.*" (*Id.* at p. 551, italics added.)

In pertinent part, our disposition in *Lafferty I* stated: "The judgment is reversed insofar as the trial court (1) sustained the demurrer to Patrick and Mary Laffertys' causes of action for negligence and under the [CLRA] (Civ. Code, § 1770 et seq.), and (2) awarded attorney fees to Wells Fargo Bank. On remand, Patrick and Mary Lafferty may proceed to trial on these two causes of action against Wells Fargo Bank that the Laffertys would otherwise have had only against Geweke Auto & RV Group but for the Holder Rule, title 16, section 433.2, of the Code of Federal Regulations. Patrick and Mary Lafferty shall recover their costs on appeal." (*Lafferty I, supra*, 213 Cal.App.4th at pp. 572-573.)

### Lafferty II

After the case was remanded, "the Laffertys filed in the trial court a memorandum of costs on appeal in which they sought $5,631.08 in costs and $232,110 in attorney fees. Wells Fargo filed a motion to tax costs and an opposition to the request for attorney fees. The trial court denied the attorney fees motion as premature, declined to issue a statement

5

of decision, and awarded $2,495.29 in costs." (*Lafferty II*, *supra*, C074843.)  The Laffertys appealed and argued they should have been awarded attorney fees for their successful appeal in *Lafferty I*.  (*Lafferty II*, *supra*, C074843.)  In an unpublished decision, we affirmed the trial court's order "because costs on appeal do not include attorney fees."  (*Ibid.*)  We also agreed with the trial court that the Laffertys' request for attorney fees was prematurely filed.  (*Ibid.*)  At the time, the Laffertys' remaining causes of action were still awaiting trial.  (*Ibid.*)

### *After Lafferty II, the Parties Stipulated to a Judgment*

After issuance of the remittitur in *Lafferty II*, the Laffertys had pending claims against Wells Fargo under the Holder Rule that were based on negligence and the CLRA. In May 2015, the parties entered into a stipulated judgment.  In pertinent part, the stipulated judgment stated:

> "1.  Plaintiffs have and recover the sum of Sixty Eight Thousand Dollars ($68,000) from Wells Fargo on their causes of action for negligence and under the [CLRA] (Civ. Code, § 1770 et seq.) which they would otherwise have had only against Geweke Auto & RV Group but for the Holder Rule, title 16, section 433.2 . . . of the Code of Federal Regulations.
>
> "2.  The plaintiffs are the prevailing party.
>
> "3.  For purposes of applying the Holder Rule, the total amount Plaintiffs actually paid toward (or under) their installment contract for the purchase of a 2006 Fleetwood Providence motorhome, VIN 4UZACJDC16CW47385 is the sum of Sixty Eight Thousand Dollars ($68,000)."

Under the terms of the stipulated judgment, the trial court retained jurisdiction "to enforce their settlement until performance, in full, of all its terms."

### *Award of prejudgment interest*.

A few days after entry of the stipulated judgment, the Laffertys moved for an award of prejudgment interest.  Wells Fargo opposed the motion, raising the FTC Holder Rule's limitation on liability among other arguments.  The trial court granted the motion and awarded "prejudgment interest at the constitutional rate of 7% for 3113 days, being

6

the sum of $40,596.93 calculated upon a principal balance of $68,000 . . . ."  Wells Fargo timely filed a notice of appeal from the order granting prejudgment interest.

### *Award of trial court costs.*

After entry of the stipulated judgment, the Laffertys also filed a memorandum to claim $13,571.22 in trial court costs.  Wells Fargo opposed any award of costs as exceeding the Holder Rule cap on recovery.  The trial court taxed some of the costs claimed by the Laffertys and awarded them $8,384.33 in costs.  Wells Fargo timely filed a notice of appeal from this order granting costs.

### *Denial of trial court attorney fees.*

In June 2015, the Laffertys moved for a "post-trial award of attorney fees and costs."  Acknowledging they had recovered the $68,000 they paid to Wells Fargo for the motor home, the Laffertys requested an additional $1,980,070 in attorney fees under Civil Code sections 1717 and 1780, subdivision (e), as well as under Code of Civil Procedure section 1021.5.  In the same motion, the Laffertys also requested $16,816.15 for "non-statutory costs normally billed to clients."  Wells Fargo opposed the request for fees and costs on the ground it would exceed the Holder Rule cap on recovery.

The trial court denied the requested fees under Civil Code sections 1717 and 1780 as barred by the Holder Rule limitation on recovery.  The trial court found that even if the Holder Rule cap did not apply, the reasonable amount of the Laffertys' attorney fees was $223,170.  The trial court denied fees under Code of Civil Procedure section 1021.5, finding Wells Fargo did nothing to adversely affect the public interest, the Laffertys did not secure a significant benefit to the public or a large class of persons, and the Laffertys' litigation aim was to secure only an award for their own benefit.  In a separate order, the trial court denied the Laffertys' request for nonstatutory costs.  The Laffertys timely filed a notice of appeal from the orders denying attorney fees and nonstatutory costs.

7

*Denial of appellate court attorney fees.*

In July 2015, the Laffertys filed a motion for an award of $464,220 in appellate attorney fees for *Lafferty I, supra,* 213 Cal.App.4th 545 and *Lafferty II, supra,* C074843. Wells Fargo opposed the motion. The trial court denied the motion based on the Holder Rule limitation. The trial court found that if the Holder Rule limitation did not apply, reasonable attorney fees for the Laffertys' appeal was $119,775.50. The Laffertys timely filed a notice of appeal from this order.

### The Laffertys' Action Against Geweke

For the sake of context, we note the trial court's findings regarding the outcome of the Laffertys' claims against Geweke – the dealership that sold them the defective motor home from which this entire litigation springs. Specifically, the trial court found the Laffertys "proceeded against Geweke. Geweke did not appear for trial. The Laffertys presented their case and received a judgment for damages and restitution in the amount of $210,000, statutory costs of $13,577.68, non-statutory costs of $5,982.07, prejudgment interest of 91,664, and attorney fees of $367,045. The total amount of the judgment is $668,268.75. [Citation.] [¶] The action against Wells Fargo, after nine years of litigation was a settlement for $68,000. Counsel for [the Laffertys] took the case on a contingency basis. He now seeks attorney fees for all his time preparing his case multiplied by a factor of two. He seeks an award of attorney fees of nearly $2,000,000. [¶] Whether or not counsel is entitled to all or a part of such request, it is not reasonable to expect that a court would be obligated to award such fees after [the Laffertys have] obtained a judgment of $688,268.75 against the primary wrongdoer in the case, the auto dealer Geweke."

## APPEAL BY WELLS FARGO

### I

### *Costs and Prejudgment Interest*

Wells Fargo contends the trial court erroneously awarded costs to the Laffertys because costs exceeded the total recovery allowed under the Holder Rule.  Based on the language of the Holder Rule and the California statute governing the award of costs, we disagree.

### A.

### *Principles of Interpretation for Statutes and Regulations*

As in *Lafferty I, supra,* 213 Cal.App.4th 545, we construe the language of the Holder Rule.  Thus, we reiterate that "issues of statutory construction and contract interpretation that do not turn on extrinsic evidence are subject to independent review. (*Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 520.)  [¶]  Here, we are called to construe the Holder Rule, a regulation promulgated by the FTC.  ([16 C.F.R.] § 433.2.) 'Although the final responsibility for interpreting a statute or regulation rests with the court, judicial deference must often be accorded to the construction applied by an agency charged with the law's administration and enforcement.  (*Whitcomb Hotel, Inc. v. Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756–757; *Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1214 (*Spanish Speaking Citizens*).) " 'The appropriate degree of judicial scrutiny in any particular case is perhaps not susceptible of precise formulation, but lies somewhere along a continuum with nonreviewability at one end and independent judgment at the other.'  [Citation.]  Quasi-legislative administrative decisions are properly placed at that point of the continuum at which judicial review is more deferential; ministerial and informal actions do not merit such deference, and therefore lie toward the opposite end of the continuum." (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 575–576.)'

9

(*Diablo Valley College Faculty Senate v. Contra Costa Community College Dist.* (2007) 148 Cal.App.4th 1023, 1034.)

"Quasi-legislative regulations are construed using the same principles as for the interpretation of statutes. (*Collins v. Overnite Transportation Co*. (2003) 105 Cal.App.4th 171, 178.) For regulations and statutes, our guiding principle 'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' (*Singh v. Superior Court* (2006) 140 Cal.App.4th 387, 392.) We heed our Supreme Court's explanation that 'it is well-settled that we must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.) If the statutory language is clear and unambiguous our inquiry ends. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215; see *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047.) In reading statutes, we are mindful that words are to be given their plain and commonsense meaning. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) . . . Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94.)' (*Murphy v. Kenneth Cole Productions, Inc*. (2007) 40 Cal.4th 1094, 1103.)" (*Lafferty I, supra,* 213 Cal.App.4th at pp. 556-557.)

**B.**

***The Holder Rule***

The FTC promulgated the Holder Rule in 1975 as a consumer protection measure to abrogate the holder in due course rule for consumer installment sale contracts that are funded by a commercial lender. (*Lafferty I, supra*, 213 Cal.App.4th at p. 559; see generally *Preservation of Consumers' Claims and Defenses*, 40 Fed. Reg. 53506 (Nov. 18, 1975).) "Under the holder in due course principle, the creditor could 'assert his right to be paid by the consumer despite misrepresentation, breach of warranty or

contract, or even fraud on the part of the seller, and despite the fact that the consumer's debt was generated by the sale.' " (*Riggs v. Anthony Auto Sales, Inc.* (W.D. La. 1998) 32 F.Supp.2d 411, 416, fn. 12 (*Riggs*), quoting 40 Fed. Reg. at 53507.) "Before the FTC rule, if a seller sold goods on credit and transferred the credit contract to a lender, the lender could enforce the buyer's promise to pay even if the seller failed to perform its obligations under the sales contract. Similarly, despite a seller's breach, the buyer was obligated to pay the lender under a consumer loan contract that directly financed the purchase of goods or services from the seller. See Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 41 F.R. 20,022, 20,023 (May 14, 1976) (describing the means by which credit terms for buyers separated the buyer's legal duty to pay from the seller's legal duty to perform)." (*Reagans v. MountainHigh Coachworks, Inc.* (2008) 881 N.E.2d 245, 250.)

In other words, before the Holder Rule "was adopted '[t]he reciprocal duties of the buyer and seller which were mutually dependent under ordinary contract law became independent of one another. Thus, the buyer's duty to pay the creditor was not excused upon the seller's failure to perform. In abrogating the holder in due course rule in consumer credit transactions, the FTC preserved the consumer's claims and defenses against the creditor-assignee. The FTC rule was therefore designed to reallocate the cost of seller misconduct to the creditor. The commission felt the creditor was in a better position to absorb the loss or recover the cost from the guilty party—the seller.' (*Home Sav. Ass'n v. Guerra* (Tex.1987) 733 S.W.2d 134, 135.)" (*Lafferty I, supra*, 213 Cal.App.4th at p. 559, quoting *Music Acceptance Corp. v. Lofing* (1995) 32 Cal.App.4th 610, 627-628 (*Music Acceptance Corp.*).)

In addition to preventing the creditor from continuing to collect on a debt for a defective product or deficient service, the FTC also provided consumers with a new cause of action against their creditors. This new cause of action allows consumers to assert against the creditors "all claims and defenses which the debtor could assert against the

11

seller of goods or services" to which the Holder Rule applies.  (40 Fed. Reg. 53506)
Thus, the FTC declared that "a consumer can (1) defend a creditor suit for payment of an
obligation by raising a valid claim against a seller as a set-off, and (2) maintain an
affirmative action against a creditor who has received payments for a return of monies
paid on account.  The latter alternative will only be available where a seller's breach is so
substantial that a court is persuaded that rescission and restitution are justified."  (40 Fed.
Reg. 53524.)

    This new cause of action, however, was expressly constrained.  The Holder Rule
language delineates the new cause of action by declaring:  "RECOVERY HEREUNDER
BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR
HEREUNDER."  (40 Fed. Reg. 53506; 16 C.F.R. § 433.2.)  The contours of this
limitation in the Holder Rule are the subject of this appeal.  In construing this limitation,
we hue to the plain meaning of the language employed by the Holder Rule.
"Fundamentally, the Holder Rule language for contracts constitutes a *notice* to
consumers. . . .  It would be antithetical to the language and its typographic emphasis to
hold that the Holder Rule language does not mean what it says."  (*Lafferty I, supra*, 213
Cal.App.4th at p. 560.)  Because the limitation language of the Holder Rule comprises
three main parts, we examine each part in turn.

### 1. *"Recovery"*

    "To determine the plain language of statutory language, courts often look to
dictionaries."  (*Joyce v. Ford Motor Co.* (2011) 198 Cal.App.4th 1478, 1491.)  To this
end, we note that Black's Law Dictionary defines "recovery" to mean: "An amount
awarded in or collected from a judgment or decree."  (Black's Law Dict. (10th ed. 2014)
p. 1466, col. 2.)  The term "recovery" is broad and regularly used to include
compensatory damages, punitive damages, attorney fees, and costs.  (E.g., *Walker v.
Farmers Ins. Exchange* (2007) 153 Cal.App.4th 965, 974 [noting plaintiffs "recovered all
of their economic damages, as well as attorney fees generated by their case"].)  Courts

have used the term "recovery" to include attorney fees and interest awarded as part of a judgment.  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 606 [addressing "recovery of attorney fees"]; *Warner Weather-Master of Westchester, Inc. v. Strom* (1964) 253 N.Y.S.2d 1017, 1018.)  And one court construed the term "recovery" to "include the entire remedy effectuated and thus encompasses the total benefit conferred upon [a party] through the efforts of counsel."  (*Highway Truck Drivers and Helpers Local 107, of Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Cohen* (E.D. Pa. 1963) 220 F. Supp. 735, 737.)

### 2.  *"Shall not exceed amounts paid by the debtor"*

The Holder Rule expressly provides that recovery "shall not exceed amounts paid by the debtor."  (16 C.F.R, § 433.2.)  In promulgating the Holder Rule, the FTC described the limitation on consumer recovery from a creditor as follows:  "From the consumer's standpoint, this means that a consumer can . . . maintain an affirmative action against a creditor who has received payments *for a return of monies paid on account*."  (40 Fed. Reg. 53524, italics added.)  A year after promulgating the Holder Rule, the FTC explained the meaning of the language of the Holder Notice that "[r]ecovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."  (41 Fed. Reg. 20023.)  The FTC elaborated:

"There is an important limitation on the creditor's liability, however.  The wording of the Notice includes the sentence 'Recovery hereunder by the debtor shall be limited to amounts paid by the debtor hereunder'.  This limits the consumer to a refund of monies paid under the contract, in the event that an affirmative money recovery is sought.  In other words the consumer may assert, by way of claim or defense, a right not to pay all or part of the outstanding balance owed the creditor under the contract; but the consumer will not be entitled to receive from the creditor an affirmative recovery which exceeds the amount of money the consumer has paid in."  (41 Fed. Reg. 20023.)  Thus, "the purpose of this language is clearly to 'not permit a consumer to recover more than he [or she] has

13

paid. . . .'  M. Smith, Preserving Consumers' Claims and Defenses, 63 A.B.A.J. 1400, 1402 (1977).  See also 40 Fed. Reg. 53506, 53527; *Eachen v. Scott Housing Systems, Inc.,* 630 F. Supp. 162, 164–65 (M. D. Ala. 1986).  A rule of unlimited liability would place the creditor in the position of an insurer or guarantor of the seller's performance." (*Riggs, supra,* 32 F.Supp.2d at p. 417.)

### 3. *"Hereunder"*

The final portion of the Holder Rule language regarding the limitation of recovery by the consumer is the word "hereunder."  By using the word "hereunder" to modify the amount and type of recovery a consumer can assert under the Holder Rule, the FTC indicated the Holder Rule constraint does not apply to independent causes of action accruing under state and local law.  As the FTC declared, "The limitation on affirmative recovery does not eliminate any other rights the consumer may have as a matter of local, state, or federal statute.  The words 'recovery hereunder' which appear in the text of the Notice refer specifically to a recovery under the Notice.  If a larger affirmative recovery is available against a creditor as a matter of state law, the consumer would retain this right."  (41 Fed. Reg. 20023.)  Thus, it is possible for a consumer to assert meritorious causes of action under the Holder Rule *and* under state law.  Indeed, this case provides an apt illustration because the Laffertys obtained a $700,000 judgment against Geweke in addition to being the prevailing party against Wells Fargo.[1]  However, recovery under the Holder Rule is capped to amounts paid regardless of additional recovery that may be independently available under state or local law.

To sum up, the language of the Holder Rule plainly defines the amount subject to the Rule broadly by using the word "recovery" to include more than just compensatory damages but narrows the amount that may be recovered to those monies actually paid

---

[1]    We are not presented with the issue of whether this constitutes double recovery and therefore express no opinion on the issue.

14

by the consumer under the contract. And the Holder Rule constraint on recovery does not apply to separate causes of action that might exist independently under state or local law. However, a consumer cannot recover more *under the Holder Rule cause of action* than what has been paid on the debt regardless of what kind of a component of the recovery it might be – whether compensatory damages, punitive damages, or attorney fees.

It is possible for a consumer to assert uncapped claims against a creditor or seller of goods sold on an installment basis if another state or local cause of action can be found to support such a claim. Indeed, the Holder Rule expressly acknowledges a cause of action may not be a consumer's only cause of action in an action for a defective product. Thus the Holder Rule rests on the well-established distinction between an action and a cause of action. "An action is usually deemed to commence upon the filing of a complaint ([Code Civ. Proc.] §§ 350 & 411.10) and remains pending until the judgment is final. ([Code Civ. Proc.] § 1049.) An action is not limited to the complaint but refers to the entire judicial proceeding at least through judgment and is generally considered synonymous with 'suit.' (*Palmer v. Agee* (1978) 87 Cal.App.3d 377, 387.) Action is not the same as cause of action. While 'action' refers to the judicial remedy to enforce an obligation, 'cause of action' refers to the obligation itself. (*Ibid.*)" (*Nassif v. Municipal Court* (1989) 214 Cal.App.3d 1294, 1298.) However, a consumer cannot assert an uncapped claim under the cause of action provided by the Holder Rule.

## C.

### *Costs*

Wells Fargo argues that the Laffertys were not entitled to receive their costs of suit because they exceeded the amount recoverable under the Holder Rule. We disagree.

The award of costs in this case is governed by Code of Civil Procedure section 1032, subdivision (b), which provides: "Except as otherwise expressly provided by

15

statute, a prevailing party is entitled as a matter of right to recover costs *in any action* or proceeding." (Italics added.) "[T]he right to recover costs is purely a creature of statute, and the applicable statute defines the extent of a party's right to recover costs. (*Benson* [*v. Kwikset* Corp. (2007)] 152 Cal.App.4th [1254,] 1279.) Under Code of Civil Procedure section 1032, subdivision (b), a prevailing party is entitled as a matter of right to recover costs except as otherwise expressly provided by statute." (*People v. United States Fire Ins. Co.* (2012) 210 Cal.App.4th 1423, 1427.) "Under the plain language doctrine of statutory construction, we must give the word 'costs' its usual and ordinary meaning both in legal and general usage. (*Benson, supra*, 152 Cal.App.4th at p. 1279.) 'Costs' have been construed to mean those fees and charges that are required by law to be paid to the courts or some of their officers or an amount that is expressly fixed by law as recoverable as costs. (*Ibid*.)" (*United States Fire Ins*., *supra*, at p. 1427.)

As the language of Code of Civil Procedure section 1032, subdivision (b), makes clear, costs are awarded to the prevailing party *in an action* rather than on a cause-of-action basis. Although some statutes allow for the denial of costs for specified causes of action, these statutes expressly address the issue of costs. For example, Government Code section 12965, subdivision (b), endows the trial court with discretion to award or deny costs for specified actions brought by Department of Fair Employment and Housing as follows: "In civil actions brought under this section, the court, in its discretion, *may* award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees." (Gov. Code, § 12965, italics added.) However, in the absence of an express exemption from the provision, costs may be claimed as a matter of right under Code of Civil Procedure section 1032, subdivision (b). (*Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040, 1059.)

Here, the trial court awarded costs to the Laffertys as the prevailing party in this action rather than as part of the recovery secured through the cause of action provided by the Holder Rule. The Holder Rule itself is silent about cost awards under state law to a

16

prevailing party in an action. Consequently, the trial court did not err in awarding costs. This result is consistent with our prior awarding of costs to the Laffertys in their first appeal. (*Lafferty I*, *supra*, 213 Cal.App.4th at pp. 572-573.) We conclude the right to costs of suit under Code of Civil Procedure section 1032, subdivision (b), are not curtailed by the Holder Rule.

**D.**

***Prejudgment Interest***

We conclude the trial court did not err in awarding prejudgment interest to the Laffertys under Civil Code section 3287. Civil Code section 3287, subdivision (a), provides: "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state."

Civil Code section 3287's broad language stands in contrast to the narrower language of Civil Code section 3288, which provides that "[i]n an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." "[T]he language of [Civil Code] section 3288 is expressly limited to certain types of actions. [Civil Code s]ection 3287, subdivision (a), applies by its terms without restriction to '*Every person who is entitled to recover damages*' (emphasis supplied). Subdivision (b) of section 3287 is expressly limited to '*Every person who is entitled . . . to receive damages based upon a cause of action in contract . . . .*' (italics supplied). Sections 3287 and 3288 were adopted from the same draft based on the Field's Draft and at the same time. Accordingly, under the usual rules of statutory interpretation, we can reasonably assume that if the Legislature had

17

intended to limit section 3287, subdivision (a) to certain actions only, it would have specifically so stated, as it did in section 3288 and more recently enacted subdivision (b), which is limited to causes of action in contract." (*Levy-Zentner Co. v. Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 796.)

In short, Civil Code section 3287 applies to every person entitled to recover damages – without reference to the underlying cause(s) of action for which damages are awarded. Because prejudgment interest under Civil Code section 3287 focuses on the person rather than the cause of action, the limitation on recovery under the Holder Rule cause of action does not affect entitlement to prejudgment interest. For this reason, the trial court did not err in awarding prejudgment interest to the Laffertys under Civil Code section 3287.

**APPEAL BY THE LAFFERTYS**

**II**

***Attorney Fees***

The Laffertys argue they "are entitled to recover . . . attorney fees . . . from Wells Fargo for the case including fees on their successful appeal." In support of their argument, the Laffertys rely on three California fee-shifting statutes: Civil Code sections 1717 and 1780, and Code of Civil Procedure section 1021.5. We are not persuaded.

**A.**

***Attorney Fees Under Civil Code Section 1717***

The first section on which the Laffertys rely is Civil Code section 1717. The trial court denied the Laffertys' request for attorney fees under Civil Code section 1717, reasoning that "there are no independent statutory or common law grounds which would allow the Laffertys to collect attorney fees against Wells Fargo. The only grounds urged by the Lafferty[s] are the liability of Geweke under CLRA. Therefore, despite the Laffertys' claim that Wells Fargo was responsible for not resolving their own liability

18

earlier, there are no independent grounds under which the Laffertys are entitled to attorney fees." The trial court further reasoned: "Civil Code section 1717 allows a fee award only to a party that has prevailed in an action on a contract. The Laffertys did not prevail in a contract action. The contract action that was originally pled did not survive summary adjudication."

As the California Supreme Court has explained, "California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his [or her] own attorney fees. (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504; *United Services Auto. Assn. v. Dalrymple* (1991) 232 Cal.App.3d 182, 187. The Legislature codified the American rule in 1872 when it enacted Code of Civil Procedure section 1021, which states in pertinent part that 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; . . .' (See, e.g., *Bruno v. Bell* (1979) 91 Cal.App.3d 776, 781 [American rule codified by Code Civ. Proc., § 1021].)" (*Trope v. Katz* (1995) 11 Cal.4th 274, 278-279.)

One of the statutes that addresses fee shifting is Civil Code section 1717. Subdivision (a) of that section provides; "*In any action on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.) Thus, Civil Code section 1717 applies only to causes of action for breach of contract.

Here, however, the Laffertys did not prevail against Wells Fargo on their breach of contract claim. As the parties' stipulation makes clear, the Laffertys prevailed only "on their causes of action for negligence and under the [CLRA] (Civ. Code, § 1770 et seq.)

19

which they would otherwise have had only against Geweke Auto & RV Group but for the Holder Rule, title 16, section 433.2 of the Code of Federal Regulations." We determined the Laffertys "forfeited their causes of action for breach of warranty, breach of contract, breach of the covenant of good faith and fair dealing, violation of the Song–Beverly Act, violation of the Tanner Consumer Protection Act, and unfair business practices." (*Id.* at pp. 551, 570.) Thus, the Laffertys did not prevail against Wells Fargo on their breach of contract claim. As a consequence, the Laffertys cannot avail themselves of a fee-shifting statute that applies only to breach of contract claims. (Civ. Code, § 1717, subd. (a).) The trial court properly denied attorney fees under Civil Code section 1717.

## B.

### *Attorney Fees Under the CLRA*

The Laffertys next argue they are entitled to attorney fees under Civil Code section 1780 of the CLRA. We disagree.

In denying fees under the CLRA, the trial court found the Laffertys "have recovered a judgment against Defendant Geweke for Geweke's failure to comply with the CLRA. Unsatisfied with this judgment, [the Laffertys] now go after the holder of the note to collect again under the CLRA. After pursuing this matter against Wells Fargo for four additional years of litigation, the parties settled."

In pertinent part, Civil Code section 1780 provides: "(a) Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following: [¶] (1) Actual damages, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000). [¶] (2) An order enjoining the methods, acts, or practices. [¶] (3) Restitution of property. [¶] (4) Punitive damages. [¶] (5) Any other relief that the court deems proper. [¶] . . . [¶] (e) The court shall award court costs and attorney's fees to a

prevailing plaintiff in litigation *filed pursuant to this section*." (Civ. Code, § 1780, subds. (a) & (e), italics added.)

The Laffertys attempt to recover under the CLRA from Wells Fargo even though they originally alleged this cause of action against Geweke. True, the Laffertys "borrowed" the CLRA action for purposes of asserting a claim for relief against Wells Fargo. (*Lafferty I*, *supra*, 213 Cal.App.4th at p. 563.) However, their recovery against Wells Fargo was attributable to the cause of action under the Holder Rule. (*Ibid.*) As we previously explained, "the Laffertys may assert causes of action against Wells Fargo under the Holder Rule only to the extent they have separately arising claims against Geweke. '[P]rivate actions to vindicate rights asserted under the [FTC] may not be maintained.' (*Holloway v. Bristol–Myers Corp.* (D.C.Cir.1973) 485 F.2d 986, 987.) Thus, the Laffertys must 'borrow' a cause of action from another statute or common law source to assert a claim against Wells Fargo." (*Lafferty I*, *supra*, at p. 563.)

For purposes of the CLRA, borrowing a cause of action under the CLRA is not the same as a cause of action "filed pursuant to" Civil Code section 1780. The Laffertys' cause of action under the CLRA arose out of their allegation the motor home's "mechanical and electrical failures were never remedied even though *Geweke* repeatedly assured them the problems would be fixed." (*Lafferty I, supra*, 213 Cal.App.4th at p. 565-566, italics added.) Thus, the CLRA claim applied to Wells Fargo only under the Holder Rule not as a claim filed under Civil Code section 1780. Without the Holder Rule, the Laffertys would have had no claim against Wells Fargo under the CLRA. Without a direct claim under the CLRA, the Laffertys are not entitled to attorney fees under Civil Code section 1780 against Wells Fargo.

## C.

### *Private Attorney General Fees*

The Laffertys argue that the trial court erred in denying their request for attorney fees under Code of Civil Procedure section 1021.5, which provides for private attorney

21

general fees.  In the Laffertys' view, they are entitled to private attorney general fees for vindicating consumer rights under the Holder Rule for all Californians.  We determine the trial court did not abuse its discretion in denying fees under Code of Civil Procedure section 1021.5.

### 1. *Code of Civil Procedure section 1021.5*

Code of Civil Procedure section 1021.5 provides for discretionary award of private attorney general fees.  In pertinent part section 1021.5 provides:  "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."  (Code Civ. Proc., § 1021.5, italics added.)

" ' "The statute's purpose is to encourage public interest litigation that might otherwise be too costly to pursue.  (*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors* (2000) 79 Cal.App.4th 505, 511.)  [¶] . . . [¶]  ' "The trial court is to assess the litigation realistically and determine from a practical perspective whether [the statutory] criteria have been met.'  (*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors, supra,* 79 Cal.App.4th at p. 511.)  Rulings under [Code of Civil Procedure] section 1021.5 are reviewed for abuse of discretion.  (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 578.)  The questions are whether the court applied the proper legal standards under section 1021.5 and, if so, whether the result was within the range of the court's discretion (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1298), i.e., whether there was a reasonable basis for the decision (*Westside Community for Independent Living, Inc. v.*

22

*Obledo* (1983) 33 Cal.3d 348, 355).” (*Bowman v. City of Berkeley* (2005) 131 Cal.App.4th 173, 176-177.)

Our review of the trial court’s denial of private attorney general fees is deferential. “ ‘An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court’s decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise. [Citations.]’ (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158.)” (*Safeco Ins. Co. of America v. Superior Court* (2009) 173 Cal.App.4th 814, 832-833.)

## 2. *Denial of Private Attorney General Fees*

In denying private attorney general fees to the Laffertys, the trial court found:

“Defendant Wells Fargo has done nothing to adversely affect the public interest. Furthermore, this lawsuit is not one in which the [Laffertys’] victory secured a significant benefit for members of the public or a large class of persons. (Compare, *Hewlett v. Squaw Valley Ski Corp*. (1997) 54 Cal App 4th 499, at pp. 543: sweater.) [The Laffertys] have failed to articulate what significant benefit has been advanced. [The Laffertys’] action sought damages only for themselves and only benefited themselves. [The Laffertys] were not successful in obtaining injunctive relief or declaratory relief as those requests did not survive the pleadings or summary adjudication. This court must consider all the pertinent circumstances and make an assessment of any gains that have resulted from this particular case. [¶] An appellate opinion clarifying the law is an insufficient basis for a fee award under section 1021.5. ‘It would be patently absurd for entitlement to attorney’s fees under section 1021.5 to be predicated upon our fortuitous decision to use Leiserson’s appeal as a tool to communicate with the bench and bar certain legal guidelines . . . .’ (*Leiserson v. City of San Diego* (1988) 202 Cal.App.3d 725, 737.) [¶]

23

Furthermore, [the Laffertys] have not presented evidence that establishes the necessity and financial burden of private enforcement of a particular benefit to the general public or a large class of persons. [The Laffertys] have not met their burden proving a significant benefit for members of the public. The court finds that it is not appropriate to make an award of attorney's fees pursuant to section 1021.5."

The trial court further stated: "[The Laffertys] contend[] that no attorney would ever accept a contingent Holder [R]ule case if the attorney cannot obtain attorney's fees. [The Laffertys] ignore[] the fact that the American rule is that the prevailing party does not become entitled to attorney's fees. This American rule does not appear to have prevented lawsuits. Whether or not this American rule should be changed to allow attorney fees to the prevailing party in every lawsuit is a matter best left to the legislature and not the courts. Neither perceptions of economic reality nor notions of 'fairness' authorize a court to extend the right to costs beyond the items allowed by rule. *Rossa v. D.L. Falk Const., Inc*. (2012) 135 Cal.Rptr.3d 329, 53 Cal.4th 387."

### 3. *The Trial Court Did Not Abuse its Discretion*

We conclude the trial court did not abuse its discretion in denying the Laffertys' request for private attorney general fees. The record supports the trial court's determination that Wells Fargo did not itself engage in any behavior contrary to the public interest. Instead, Wells Fargo's liability is derived only from conduct engaged in by Geweke. The record also supports the trial court's finding that the Laffertys achieved only a limited victory under the Holder Rule. The appeal of *Lafferty I* resulted in the Laffertys losing six of their asserted causes of action and preserving only two claims against Wells Fargo. (*Lafferty I, supra*, 213 Cal.App.4th at pp. 571-572.) And the record supports the trial court's finding the Laffertys failed to secure a significant benefit for the public. As this court noted in *Lafferty I*, our holding was foreshadowed by this court's prior decision in *Music Acceptance Corp., supra,* 32 Cal.App.4th 610. (*Lafferty I, supra*, at p. 558.) And the Laffertys achieved no success in *Lafferty II* in

24

which we rejected all six of their contentions in an unpublished decision. (*Lafferty II*, *supra*, C074843.) The trial court did not abuse its discretion in determining the Laffertys' partial success in one of their prior appeals did not warrant private attorney general fees.

## III

### *The Amount of the Holder Rule Limit on Recovery in this Case*

Anticipating our conclusion that the Holder Rule limits their recovery of attorney fees, the Laffertys advance the argument that "the amount of the Holder Rule cap is $279,406.87." The Laffertys make this argument even though they stipulated that, "[f]or purposes of applying the Holder Rule, the total amount [the Laffertys] actually paid toward (or under) their installment contract for the purchase of a 2006 Fleetwood Providence motorhome . . . is the sum of Sixty Eight Thousand Dollars ($68,000)." Nonetheless, the Laffertys attempt to increase the value of their payment by arguing that they are entitled to "1) Credit for $103,800 proceeds of sale by [Wells Fargo] of the Laffertys' motor home after [Wells Fargo] repossessed; and 2) the deficiency balance on [the Laffertys'] note to [Wells Fargo], for which [the Laffertys] must pay taxes on debt forgiveness in the amount of $107,606.87." In essence, the Laffertys' argument rests on the contention that "[f]orgiveness of their deficiency debt is thus the Laffertys' settlement payment to Wells Fargo." The argument is devoid of merit.

As we noted above, the Holder Rule expressly provides that recovery "[s]hall not exceed amounts paid by the debtor." (16 C.F.R. § 433.2.) In promulgating the Holder Rule, the FTC noted the limitation on consumer recovery from a creditor as follows: "From the consumer's standpoint, this means that a consumer can . . . maintain an affirmative action against a creditor who has received payments *for a return of monies paid on account*." (40 Fed. Reg. 53524, italics added.) A year after promulgating the Holder Rule, the FTC further explained the meaning of the language of the Holder Notice

25

that "[r]ecovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." (41 Fed. Reg. 20023.) The FTC stated:

"There is an important limitation on the creditor's liability, however. The wording of the Notice includes the sentence 'Recovery hereunder by the debtor shall be limited to amounts paid by the debtor hereunder.' This limits the consumer to a refund of monies paid under the contract, in the event that an affirmative money recovery is sought. In other words the consumer may assert, by way of claim or defense, a right not to pay all or part of the outstanding balance owed the creditor under contract; but the consumer will not be entitled to receive from the creditor an affirmative recovery which exceeds the amount of money the consumer has paid in." (41 Fed. Reg. 20023.) Thus, "the purpose of this language is clearly to 'not permit a consumer to recover more than he [or she] has paid. . . .' M. Smith, Preserving Consumers' Claims and Defenses, 63 A.B.A.J. 1400, 1402 (1977). *See also* 40 Fed. Reg. 53506, 53527; *Eachen v. Scott Housing Systems, Inc.,* 630 F. Supp. 162, 164–65 (M.D.Ala.1986). A rule of unlimited liability would place the creditor in the position of an insurer or guarantor of the seller's performance." (*Riggs*, *supra*, 32 F.Supp.2d at p. 417.)

Because the amount that can be recovered by the consumer under the Holder Rule is limited to monies actually paid, a consumer cannot seek to recover a portion of debt that was forgiven. A forgiven debt is not the equivalent of monies actually paid by the debtor. (See *Beard v. Goodrich* (2003) 110 Cal.App.4th 1031, 1039.) For this reason, recovery under the Holder Notice may be quite limited even on a large purchase if the purchaser has made only a small payment toward the item purchased. " '[E]ven if the buyer rejects [goods] and proves substantial damages, the maximum exposure of the creditor under the FTC rule is the amount already paid by the debtor. If, for example, the debtor buys an $8,000 car, pays $200 down and suffers $20,000 of damages as a result of breach of warranty, he [or she] can recover only $200 from the creditor and must turn to the seller for the additional $19,800.' " (*Reagans v. MountainHigh Coachworks, Inc.*

26

(2008) 881 N.E. 2d 245, quoting 2 White & Summers, Uniform Commercial Code (4th Ed.1995) 189, Section 17–9.)

Neither the amount of the motor home realized by Wells Fargo in its sale of the repossessed defective product nor the forgiveness of the deficiency by Wells Fargo constitutes payment by the Laffertys for purposes of the Holder Rule limitation on recovery. Here, the Laffertys stipulated they actually paid $68,000 to Wells Fargo under the installment contract. The trial court properly relied on the parties' own stipulation to the amount actually paid in determining the limitation on recovery imposed under the Holder Rule.

## IV

### *The Laffertys' Federal Constitutional Claims*

The Laffertys launch a series of arguments that challenge the trial court's denial of their motion for attorney fees as violating their constitutional rights of petition, to due process of law, and to equal protection. We reject all of the arguments.

### A.

### *First Amendment Challenge*

The Laffertys contend the trial court violated their First Amendment right of petition. The Laffertys, however, do not identify whether they argue that the Holder Rule is unconstitutional on its face or as applied.

The gravamen of the Laffertys' argument is that the failure of the Holder Rule to allow for unlimited attorney fees violates the United States Constitution. This claim must be examined in the context of our nation's history, in which parties' responsibility for their own attorney fees has been the norm. As the United States Supreme Court has explained, "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." (*Alyeska Pipeline Service Co. v. Wilderness Society* (1975) 421 U.S. 240, 247 [44 L.Ed.2d 141] (*Alyeska*).) The *Alyeska* court continued, "We do not purport to assess the merits or demerits of the 'American Rule'

27

with respect to the allowance of attorneys' fees. It has been criticized in recent years, and courts have been urged to find exceptions to it. It is also apparent from our national experience that the encouragement of private action to implement public policy has been viewed as desirable in a variety of circumstances. But the rule followed in our courts with respect to attorneys' fees has survived. It is deeply rooted in our history and in congressional policy; and it is not for us to invade the legislature's province by redistributing litigation costs" in the absence of statutory fee-shifting. (*Id.* at pp. 270-271.)

The American Rule has also been the norm throughout California's legal history. "Under the American rule, as a general proposition each party must pay his [or her] own attorney fees. This concept is embodied in section 1021 of the Code of Civil Procedure, which provides that each party is to bear his [or her] own attorney fees unless a statute or the agreement of the parties provides otherwise." (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504; *Trope v. Katz*, *supra*, 11 Cal.4th at pp. 278-279 [American Rule was codified in the Field Code in 1872]; *Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1200 [Field Code's adoption in 1872].) Since the adoption of the Field Code, it has been uniformly held that the question of "[w]hether to award attorneys' fees as an item of costs to a litigant is a matter for the Legislature to determine." (*City of Industry v. Gordon* (1972) 29 Cal.App.3d 90, 94; see also *County of Los Angeles v. Ortiz* (1971) 6 Cal.3d 141, 148.) Given the long-standing validity of the American Rule in both federal and California jurisprudence, we decline to invade the prerogative of a legislative body to remove the limit on attorney fees imposed by the Holder Rule.

The Laffertys offer no precedential authority in support of their proposition that the American Rule is unconstitutional as it relates to the Holder Rule limitation on recovery. In support of the proposition that a legislative body cannot limit attorney fees in providing a cause of action, the Laffertys cite only to a dissent by Chief Justice Bird in

*Roa v. Lodi Medical Group, Inc*. (1985) 37 Cal.3d 920.  The *Roa* majority rejected constitutional challenges to the limitation on attorney fees in the Medical Injury Compensation Reform Act of 1975 (MICRA).  (*Roa*, *supra*, at p. 922.)  It has long been settled that a dissent does not serve as precedential authority.  (*Del Mar Water, etc., Co. v. Eshleman* (1914) 167 Cal. 666, 682.)

Moreover, the Laffertys have not met their burden of showing the Holder Rule precludes any right of access to the courts.  Indeed, the section of their brief devoted to their First Amendment argument is bereft of any citations to the record.

**B.**

***Due Process Challenge***

The Laffertys assert that due process would be violated because Wells Fargo's "interpretation of the *Holder* [*Rule*] cap, if sustained means that any competent California lawyer whose client motorist has an affirmative claim against the finance company, will not file suit much less take an appeal – unless the client agrees to pay in cash."  This assertion has no merit as demonstrated by their meager analysis.[2]

In support of their due process challenge, the Laffertys rely on *California Teachers Ass'n v. State of California* (1999) 20 Cal.4th 327 (*California Teachers Ass'n*).  That case, however, is inapposite.  *California Teachers Ass'n* involved a challenge to an Education Code section that required teachers who exercised their constitutional rights to

---

[2]     The Laffertys do not identify whether their due process challenge is facial or as applied.  (See *HSH, Inc. v. City of El Cajon* (S.D. Ca. 2014) 44 F.Supp.3d 996, 1004 [beginning due process analysis by identifying the challenge as an attack on the facial validity of an ordinance].)  And the Laffertys fail to identify the level of scrutiny applicable to their challenge.  (But see *Witt v. Department of Air Force* (9th Cir. 2008) 527 F.3d 806, 813 [holding due process challenge must begin with assessing the correct level of scrutiny for the analysis].)  We would be justified in deeming the argument forfeited for lack of adequate analysis.  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)  Nonetheless, we address the Laffertys' meager analysis on the merits.

29

a hearing on threatened suspensions or dismissals to pay to the state one-half the cost of the administrative law judge if the teachers did not prevail in their hearings.  (*Id.* at p. 331.)  The California Supreme Court struck down this statutory requirement on due process grounds.  (*Ibid.*)

The *California Teachers Ass'n* court held that "[t]he imposition upon such a teacher of the open-ended cost of the adjudicator conflicts with the centuries-old common law tradition that *the salaries of judges* are to be borne by the state, and not by the litigants."  (*Id.* at p. 331, italics added.)  In contrast to *California Teachers Ass'n*, the Laffertys were never faced with the obligation to pay any part of the salary of the judges who have heard this case.  Consequently, *California Teachers Ass'n* provides no support for the Laffertys' due process argument.

The Laffertys also misplace their reliance on *Boddie v. Connecticut* (1971) 401 U.S. 371, 28 L.Ed.2d 113.  In *Boddie,* the United States Supreme Court held "that due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard."  (*Id*. at p. 377.)  Based on this principle, the *Boddie* court struck down a filing fee that prevented indigent parties from being able to secure a divorce.  As the Supreme Court explained, "marriage involves interests of basic importance in our society" so that "the State's refusal to admit these appellants to its courts, the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages, and, in the absence of a sufficient countervailing justification for the State's action, a denial of due process."  (*Id.* at pp. 376, 380-381.)  Here, however, the Laffertys were not barred from court due to their inability to pay filing fees.  The holding in *Boddie* that safeguards the rights of indigents to resolve their marital interests is inapplicable to the Laffertys' contention

that they should receive uncapped attorney fees for prevailing on the merits of a purely commercial transaction.

We also reject the Laffertys' contention that "[w]ithout the ability to bring an action in court against the Bank for affirmative relief, the Laffertys' claim under the *Holder* [*Rule*] would have no substance." This contention is frivolous. The Laffertys did exactly what they disclaim: i.e., filed a claim against the bank for affirmative relief. (*Lafferty I, supra*, 213 Cal.App.4th at pp. 552-553.) Instead of an arbitrary deprivation of due process, we view the Holder Rule limitation on attorney fees as consistent with the rule regarding attorney fees that has been the norm throughout our nation and state's history. (*Alyeska, supra,* 421 U.S. at p. 247; *Trope v. Katz, supra*, 11 Cal.4th at pp. 278-279.) Consequently, we reject the Laffertys' due process claim.

## C.

### *Equal Protection Challenge*

The Laffertys assert that the Holder Rule cap on recovery violates constitutional equal protection guarantees. We deem the assertion forfeited.

As we explained in *Lafferty I*, " 'When a point is asserted without argument and authority for the proposition, "it is deemed to be without foundation and requires no discussion by the reviewing court." (*Atchley v. City of Fresno* [(1984)] 151 Cal.App.3d [635,] 647; accord, *Berger v. Godden* [(1985)] 163 Cal.App.3d [1113,] 1117 ["failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error]".)' " (*Lafferty I, supra*, 213 Cal.App.4th at pp. 571-572, quoting *In re S.C., supra*, 138 Cal.App.4th at p. 408.)

In support of their equal protection claim, the Laffertys do not describe whether their challenge is one that is facial or as applied; the level of scrutiny they believe this constitutional review merits; or what the suspect classification might be; or even how they are like a similarly situated class that does not suffer the same equal protection deprivation. (See generally *HSH, Inc. v. City of El Cajon, supra,* 44 F.Supp.3d at

31

pp. 1004-1006 [noting equal protection analysis requires determination of whether the challenge is facial or as applied; identification of the suspect classification; comparison with a similarly situated class; and articulation of the level of scrutiny].) Moreover, the Laffertys also make no attempt to relate any of their equal protection assertions to anything contained in the record on appeal. As an undeveloped argument that is unsupported by any record citations, we deem the Laffertys' equal protection claim to be forfeited. (*Lafferty I, supra*, 213 Cal.App.4th at pp. 571-572.)

## V

### *Non-statutory Costs Claimed by the Laffertys*

The Laffertys contend the trial court erred in denying their request for non-statutory costs. Specifically, the Laffertys argue that "the court never stated explicitly that it viewed as capped, appellants' non-statutory, [Code of Civil Procedure] section 1033.5(c) costs. Nor did it ever explicitly state a reason for its denial of the costs, nor analyze their propriety in an exercise of its discretion."

In response, Wells Fargo points out the trial court denied the request for nonstatutory costs on four separate grounds: (1) The Holder Rule barred nonstatutory costs that exceeded recovery of amounts paid by the Laffertys. (2) The Laffertys' request was procedurally flawed as not properly made in a memorandum of costs. (3) The Laffertys did not show they were entitled to recovery of their attorney's overhead as costs. And (4) the Laffertys already recovered nonstatutory costs from Geweke.

On appeal, the trial court's decision is presumed to be correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) An appellant or cross-appellant has the burden to demonstrate error in order to secure a reversal. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) And issues not raised in an opening brief are deemed abandoned. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466.) Here, the Laffertys' opening brief on this issue does not address three of the trial court's four

32

reasons for denying nonstatutory fees. And while the Laffertys' reply contains an extended attack on the integrity of the trial court, it does not address the merits of three of the four grounds for the denial of nonstatutory costs. Because correctness of any of the four grounds given by the trial court for denial of nonstatutory costs suffices to affirm, the Laffertys' argument on this issue cannot succeed for lack of prejudice. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376; *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833.)

DISPOSITION

The post-trial orders (1) granting statutory costs under Code of Civil Procedure section 1032, subdivision (b), (2) granting prejudgment interest under Civil Code section 3287, subdivision (a), (3) denying attorney fees under Civil Code sections 1717 and 1780, as wells as under Code of Civil Procedure section 1021.5, and (4) denying nonstatutory costs are affirmed. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (5).)


                                            /s/
                                   ------------------------
                                   HOCH, J.



We concur:


        /s/
------------------------
RAYE, P. J.



        /s/
------------------------
BUTZ, J.


33