Filed 6/9/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DAMON SPIKENER,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>ALLY FINANCIAL, INC.,<br><br>     Defendant and Respondent. | A157301<br><br>(Alameda County<br>Super. Ct. No. HG18893481) |

Title 16, section 433.2 of the Code of Federal Regulations (the Holder Rule), promulgated by the Federal Trade Commission (FTC), requires consumer credit contracts to include the following notice: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

*Lafferty v. Wells Fargo Bank, N.A.* (2018) 25 Cal.App.5th 398, 410–414 (*Lafferty*) held that the limitation on recovery contained in the second sentence of the Holder Rule notice applies to attorney fees a debtor seeks to recover pursuant to a claim asserted under the Holder Rule. In other words, *Lafferty* held a debtor cannot recover damages and attorney fees for a Holder Rule claim that collectively exceed the amount paid by the debtor under the

1

contract. After *Lafferty* issued, the FTC construed the Holder Rule in the same manner. In response to *Lafferty*, the California Legislature enacted Civil Code section 1459.5,[1] effectively providing, in part, that the Holder Rule's limitation on recovery does not apply to attorney fees.

We conclude the FTC's construction of the Holder Rule is entitled to deference. We further conclude that, to the extent section 1459.5 authorizes a plaintiff to recover attorney fees on a Holder Rule claim even if that results in a total recovery greater than the amount the plaintiff paid under the contract, section 1459.5 conflicts with, and is therefore preempted by, the Holder Rule. Accordingly, when a debtor asserts a claim against a holder pursuant to the Holder Rule, the debtor's recovery—including any attorney fees based on the Holder Rule claim—cannot exceed the amount the debtor paid under the contract.

## BACKGROUND

In February 2018, Damon Spikener (Plaintiff) filed a complaint alleging that in 2016, he purchased a car from Premier Automotive of Oakland, LLC (Seller) by means of a credit sales contract (the Contract). At the time of the purchase, Seller did not inform Plaintiff that the car had been in a major collision resulting in a severe reduction in its value. After the purchase, but before Plaintiff learned about the collision, the Contract was assigned to Ally Financial, Inc. (Ally). The Contract included the notice required by the Holder Rule.

Plaintiff sued Ally under the Consumers Legal Remedies Act (§§ 1750–1784; hereafter CLRA), based on Seller's misrepresentations about the car's condition. In August 2018, the parties entered into a settlement

---

[1] All undesignated section references are to the Civil Code.

2

agreement in which Ally agreed to rescind the Contract and pay Plaintiff a sum equal to the amount he had paid under the Contract, approximately $3,500. The settlement agreement preserved Plaintiff's claim for attorney fees and declared Plaintiff the prevailing party for purposes of such a claim, but otherwise preserved Ally's right to oppose a fee motion.

Plaintiff filed a fee motion, seeking more than $13,000 in attorney fees pursuant to CLRA's fee shifting provision (§ 1780, subd. (e)).[2] The trial court denied the motion, finding Plaintiff was not entitled to fees under *Lafferty, supra,* 25 Cal.App.5th 398. This appeal followed.

DISCUSSION

## I. *The Holder Rule*

The parties first dispute whether *Lafferty* correctly construed the Holder Rule's limitation on recovery.

### A. *Background*

"The FTC promulgated the Holder Rule in 1975 as a consumer protection measure to abrogate the holder in due course rule for consumer installment sale contracts that are funded by a commercial lender. [Citations.] 'Under the holder in due course principle, the creditor could "assert his right to be paid by the consumer despite misrepresentation, breach of warranty or contract, or even fraud on the part of the seller, and despite the fact that the consumer's debt was generated by the sale." ' [Citation.] 'Before the FTC rule, if a seller sold goods on credit and transferred the credit contract to a lender, the lender could enforce the buyer's promise to pay even if the seller failed to perform its obligations

---

[2] Section 1780, subdivision (e) provides: "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."

3

under the sales contract.  Similarly, despite a seller's breach, the buyer was obligated to pay the lender under a consumer loan contract that directly financed the purchase of goods or services from the seller.' " (*Lafferty, supra,* 25 Cal.App.5th at pp. 410–411.)

" ' " 'In abrogating the holder in due course rule in consumer credit transactions, the FTC preserved the consumer's claims and defenses against the creditor-assignee.  The FTC rule was therefore designed to reallocate the cost of seller misconduct to the creditor.  The commission felt the creditor was in a better position to absorb the loss or recover the cost from the guilty party—the seller.' [Citation.]" ' [¶]  In addition to preventing the creditor from continuing to collect on a debt for a defective product or deficient service, the FTC also provided consumers with a new cause of action against their creditors.  This new cause of action allows consumers to assert against the creditors 'all claims and defenses which the debtor could assert against the seller of goods or services' to which the Holder Rule applies.  [¶]  This new cause of action, however, was expressly constrained.  The Holder Rule language delineates the new cause of action by declaring:  'RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.'  (40 Fed. Reg. 53506 (Nov. 18, 1975); 16 C.F.R. § 433.2(2018).)" (*Lafferty, supra,* 25 Cal.App.5th at pp. 411–412.)

B.  Lafferty

In *Lafferty,* the plaintiffs bought a vehicle under an installment contract that was subsequently assigned to a holder.  (*Lafferty, supra,* 25 Cal.App.5th at p. 405.)  The plaintiffs sued the holder pursuant to the Holder Rule, asserting claims for negligence and under the CLRA (additional claims were dismissed by the court).  (*Id.* at pp. 406–407.)  The plaintiffs and the holder entered into a settlement agreement pursuant to which the holder

4

paid the plaintiffs the amount the plaintiffs had paid under the installment contract. (*Id.* at p. 407.) The plaintiffs moved for attorney fees, and the trial court denied fees as barred by the Holder Rule's limitation on recovery in excess of the amount paid by the debtor under the assigned contract. (*Id.* at p. 408.)

*Lafferty* analyzed the Holder Rule's limitation on recovery by looking at its three component parts: "recovery," "shall not exceed amounts paid by the debtor," and "hereunder." (*Lafferty, supra,* 25 Cal.App.5th at pp. 412–413.) It found "[t]he term 'recovery' is broad and regularly used to include compensatory damages, punitive damages, attorney fees, and costs." (*Id.* at p. 412.) *Lafferty* considered the FTC's statements about the phrase "shall not exceed amounts paid by the debtor," made at the time it promulgated the Holder Rule and shortly thereafter. (*Id.* at pp. 412–413.) Based on these comments, *Lafferty* reasoned, " 'the purpose of this language is clearly to "not permit a consumer to recover more than he [or she] has paid. . . ." [Citations.] A rule of unlimited liability would place the creditor in the position of an insurer or guarantor of the seller's performance.' " (*Id.* at p. 413.) With the word "hereunder," the *Lafferty* court found, based in part on statements made by the FTC shortly after promulgating the Holder Rule, "the FTC indicated the Holder Rule constraint does not apply to independent causes of action accruing under state and local law. . . . However, recovery under the Holder Rule is capped to amounts paid regardless of additional recovery that may be independently available under state or local law." (*Id.* at p. 413.) *Lafferty* concluded: "To sum up, the language of the Holder Rule plainly defines the amount subject to the rule broadly by using the word 'recovery' to include more than just compensatory damages but narrows the amount that may be recovered to those monies actually paid by the consumer under the contract.

5

And the Holder Rule constraint on recovery does not apply to separate causes of action that might exist independently under state or local law. However, a consumer cannot recover more *under the Holder Rule cause of action* than what has been paid on the debt regardless of what kind of a component of the recovery it might be—whether compensatory damages, punitive damages, or attorney fees." (*Id.* at p. 414.)[3]

C. *The FTC's Confirmation of the Holder Rule*

In 2015, the FTC requested public comments on "the overall costs and benefits, and regulatory and economic impact, of" the Holder Rule. (80 Fed.Reg. 75018 (Dec. 1, 2015).) In 2019—after *Lafferty* issued—the FTC issued a confirmation of the Holder Rule (the Rule Confirmation). (84 Fed.Reg. 18711 (May 2, 2019).)

As relevant here, the Rule Confirmation noted that several of the comments received "addressed whether the Rule's limitation on recovery to 'amounts paid by the debtor' allows or should allow consumers to recover attorneys' fees above that cap . . . ." (84 Fed.Reg., *supra,* at p. 18713.) After discussing the substance of the comments, the Rule Confirmation provided as follows: "We conclude that if a federal or state law separately provides for recovery of attorneys' fees independent of claims or defenses arising from the

---

[3] In what appears to be an alternative basis for affirming the trial court's denial of attorney fees, *Lafferty* held the CLRA's fee provision, which applies "in litigation filed pursuant to this section" (§ 1780, subd. (e)), did not apply to a Holder Rule claim. (*Lafferty, supra,* 25 Cal.App.5th at pp. 418–419.) The court reasoned that the plaintiffs " 'borrowed' the CLRA action for purposes of asserting a claim for relief against [the holder]" pursuant to the Holder Rule, and "borrowing a cause of action under the CLRA is not the same as a cause of action 'filed pursuant to' " section 1780. (*Lafferty,* at p. 419.) We express no opinion on this analysis, which was not necessary to the court's decision.

seller's misconduct, nothing in the Rule limits such recovery. Conversely, if the holder's liability for fees is based on claims against the seller that are preserved by the Holder Rule Notice, the payment that the consumer may recover from the holder—including any recovery based on attorneys' fees—cannot exceed the amount the consumer paid under the contract. Claims against the seller for attorneys' fees or other recovery may also provide a basis for set off against the holder that reduces or eliminates the consumer's obligation. The Commission does not believe that the record supports modifying the Rule to authorize recovery of attorneys' fees from the holder, based on the seller's conduct, if that recovery exceeds the amount paid by the consumer." (*Ibid.*)

D. *Analysis*

Plaintiff attacks *Lafferty*'s reasoning and urges us to disagree with it. We need not address Plaintiff's challenges to *Lafferty* because we conclude the Rule Confirmation is dispositive on the Holder Rule's application to attorney fees.

"Because we are applying a federal [regulation], we follow rules of . . . construction enunciated by the United States Supreme Court." (*Kilroy v. Superior Court* (1997) 54 Cal.App.4th 793, 801.) The United States Supreme Court recently reaffirmed, and discussed the limitations of, the doctrine by which federal courts "defer[] to agencies' reasonable readings of genuinely ambiguous regulations," known as "*Auer* deference." (*Kisor v. Wilkie* (2019) 139 S.Ct. 2400, 2408 (*Kisor*).) The Court explained, "a court should not afford *Auer* deference unless the regulation is genuinely ambiguous" and "the agency's reading . . . [is] 'reasonable.' " (*Kisor,* at p. 2415.) In addition, "the regulatory interpretation must be . . . the agency's 'authoritative' or 'official' position,' rather than any more ad hoc statement not reflecting the agency's

7

views"; "must in some way implicate its substantive expertise"; and "must reflect 'fair and considered judgment.' " (*Id.* at pp. 2416–2417.)

The FTC's construction of the Holder Rule is a reasonable one, for the reasons set forth in *Lafferty, supra,* 25 Cal.App.5th at pages 410–414. We will assume, without deciding, that Plaintiff's construction is also reasonable, rendering the regulation ambiguous. The Rule Confirmation was issued by the FTC and published in the Federal Register, and was indisputably the FTC's official position. Interpretation of the Holder Rule, which provides that taking a consumer credit contract without the prescribed language is an unfair or deceptive act or practice, falls within the substantive expertise of the FTC. (See 15 U.S.C. § 45 [empowering the FTC to prevent the use of "unfair or deceptive acts or practices in or affecting commerce"].) The Rule Confirmation issued after the FTC solicited and reviewed public comments and reflects the agency's considered judgment. The FTC's interpretation is entitled to deference. (Cf. *Kisor, supra,* 139 S.Ct. at p. 2414 ["*Auer* deference . . . is 'unwarranted' . . . when a court concludes that an interpretation does not reflect an agency's authoritative, expertise-based, 'fair[, or] considered judgment.' "].)

Plaintiff argues a claim for CLRA attorney fees against a holder is "independent of claims or defenses arising from the seller's misconduct" (the Rule Confirmation, 84 Fed.Reg., *supra,* at p. 18713), and therefore not limited by the Holder Rule's limitation on recovery, because it is based on the holder's litigation conduct rather than any conduct by the seller. We disagree. The CLRA's fee-shifting provision authorizes a fee award "to a prevailing plaintiff in litigation filed pursuant to this section." (§ 1780, subd. (e).) Where a CLRA claim is filed against a holder based on misconduct by a seller of goods or services, it is filed pursuant to the Holder Rule; in the

8

absence of the Holder Rule, the claim would be barred. If the plaintiff prevails, his or her claim for CLRA fees is not "independent of claims . . . arising from the seller's misconduct" (84 Fed.Reg., *supra,* at p. 18713), but rather is wholly dependent on such claims. Thus, the CLRA's fee-shifting provision falls squarely within the second category identified by the Rule Confirmation: when "the holder's liability for fees is based on claims against the seller that are preserved by the Holder Rule Notice . . . ." (84 Fed.Reg., *supra,* at p. 18713.) In such cases, the Rule Confirmation clearly provides that "the payment that the consumer may recover from the holder—including any recovery based on attorneys' fees—cannot exceed the amount the consumer paid under the contract." (*Ibid.*)

Plaintiff also raises various policy arguments to support his construction of the Holder Rule. Courts afford deference to administrative agencies (when warranted) because of the understanding that "interpretive decisions . . . about how best to construe an ambiguous term in light of competing policy interests" should not be shifted from "the agencies that administer the statutes to federal courts." (*City of Arlington, Tex. v. F.C.C.* (2013) 569 U.S. 290, 304; see *id.* at pp. 304–305 ["We have cautioned that 'judges ought to refrain from substituting their own interstitial lawmaking' for that of an agency."].) The policy implications of the FTC's construction do not impact our analysis.

Accordingly, the Holder Rule's limitation on recovery applies to attorney fees based on a claim asserted pursuant to the Holder Rule, such that a plaintiff's total recovery on a Holder Rule claim—including attorney fees—cannot exceed the amount paid by the plaintiff under the contract.

9

II. *Section 1459.5*

Plaintiff next relies on section 1459.5, which was enacted after *Lafferty* and provides:  "A plaintiff who prevails on a cause of action against a defendant named pursuant to Title 16, Part 433 of the Code of Federal Regulations [the Holder Rule] or any successor thereto, or pursuant to the contractual language required by that part or any successor thereto, may claim attorney's fees, costs, and expenses from that defendant to the fullest extent permissible if the plaintiff had prevailed on that cause of action against the seller."  The legislative history makes clear that the Legislature's intent was to "reverse[] the decision in *Lafferty*" and "restor[e] California's original interpretation of the 'Holder Rule' . . . ."  (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 1821 (2019–2020 Reg. Sess.) Jun. 11, 2019, pp. 4–5; see also Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1821 (2019–2020 Reg. Sess.) Apr. 9, 2019, p. 6 ["Before *Lafferty*, attorneys were willing to handle consumer fraud cases on a contingency basis, knowing that if [the] client's claims were meritorious, the financing company would pay their attorney fees. . . .  Since *Lafferty*, many defrauded customers are unable to find attorneys to take these cases . . . ."].)[4]

Ally argues section 1459.5's authorization of attorney fees for Holder Rule claims regardless of the Holder Rule's limitation on recovery conflicts with, and is therefore preempted by, the Holder Rule.  We agree.[5]

---

[4] We grant Plaintiff's unopposed request for judicial notice of four legislative analyses of the bill enacting section 1459.5.

[5] We therefore need not decide Ally's alternative argument that section 1459.5 violates the constitutional separation of powers, or the parties' dispute as to whether section 1459.5 (enacted and effective after judgment issued in this case) applies prospectively only.

10

" 'The supremacy clause of the United States Constitution establishes a constitutional choice-of-law rule, makes federal law paramount, and vests Congress with the power to preempt state law.' [Citations.] . . . Preemption is foremost a question of congressional intent:  did Congress, expressly or implicitly, seek to displace state law?  [Citations.]  [¶]  . . .  The burden is on . . . the party asserting preemption[] to demonstrate [preemption] applies." (*Quesada v. Herb Thyme Farms, Inc.* (2015) 62 Cal.4th 298, 307–308 (*Quesada*).)  "[B]oth federal statutes and regulations may have preemptive effect." (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 814 (*Olszewski*).)

"[C]onflict preemption will be found when simultaneous compliance with both state and federal directives is impossible." (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 936; see also *Olszewski, supra,* 30 Cal.4th at p. 815 ["state law actually conflicts with federal law 'where it is impossible for a private party to comply with both state and federal requirements' "].)  For example, in *Olszewski,* our Supreme Court considered whether state laws "authorizing a health care provider to assert and collect on a lien for the full cost of its services against 'any judgment, award, or settlement obtained by' a Medicaid beneficiary" were preempted by federal law. (*Olszewski,* at p. 804.)  The Supreme Court concluded that federal Medicaid statutes and regulations "limit provider collections from a Medicaid beneficiary to, at most, the cost-sharing charges allowed under the state plan, even when a third party tortfeasor is later found liable for the injuries suffered by that beneficiary." (*Id.* at p. 820.)  Because the state laws "allow the provider to recover more than these cost-sharing charges from the beneficiary, they cannot coexist with federal law" and therefore are preempted. (*Id.* at pp. 820–821.)

In contrast, in *People v. Guiamelon* (2012) 205 Cal.App.4th 383 (*Guiamelon*), the Court of Appeal considered whether a state statute making it unlawful for physicians to offer kickbacks for patient referrals, which had no specific intent requirement, conflicted with the federal Medicaid antikickback statute, which required such violations be committed knowingly or willfully. (*Id.* at pp. 390, 396, 398–399.) The Court of Appeal reasoned that the different scienter requirement "is not dispositive. Conflict preemption is not demonstrated simply because a state statute prohibits what is allowed under a federal statute." (*Id.* at p. 399.) Instead, the Court of Appeal found significant the enforcing federal agency's position that " 'conduct that is lawful under the federal anti-kickback statute or this regulation may still be illegal under State law.' " (*Id.* at p. 406, added italics omitted.) Under this interpretation, the state statute did not conflict with, and was not preempted by, the federal law. (*Id.* at pp. 407–408.)

"Where Congress has legislated in a field traditionally occupied by the states, 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress,' " known as "[t]he presumption against preemption." (*Olszewski, supra,* 30 Cal.4th at pp. 815–816.) " ' "[C]onsumer protection laws such as . . . CLRA, are within the states' historic police powers and therefore are subject to the presumption against preemption." ' " (*Paduano v. American Honda Motor Co., Inc.* (2009) 169 Cal.App.4th 1453, 1474.) We therefore "conduct our analysis from the starting point of a presumption that displacement of state regulation in areas of traditional state concern was not intended absent clear and manifest evidence of a contrary congressional intent." (*Quesada, supra,* 62 Cal.4th at p. 315.)

The FTC's interpretation of the Holder Rule informs our preemption analysis. (See *Olszewski, supra,* 30 Cal.4th at p. 821 [if federal law is ambiguous, an agency's interpretation, if entitled to deference, can clarify whether the state law "conflict[s] with federal law"]; *Guiamelon, supra,* 205 Cal.App.4th at p. 405 ["In determining whether we may infer a Congressional intent to preempt state law, we may rely on a federal agency's interpretation of the relevant statute: ' "In general, an agency's interpretation of statutes within its administrative jurisdiction is given presumptive value as a consequence of the agency's special familiarity and presumed expertise with . . . legal and regulatory issues." ' "].) As discussed above, the FTC has construed the Holder Rule's limitation on recovery to limit a plaintiff's total recovery, including attorney fees, on a claim asserted pursuant to the Holder Rule to the amount the plaintiff paid under the contract, regardless of whether the state claim being asserted pursuant to the Holder Rule contains fee-shifting provisions. This demonstrates a clear intent to prohibit states from authorizing a recovery that exceeds this amount on a Holder Rule claim.

Of course, the Rule Confirmation expressly preserves a state's ability to authorize attorney fees against holders *independent of Holder Rule claims,* and clarifies that such fee claims are not constrained by the Holder Rule's limitation on recovery. (84 Fed.Reg., *supra,* at p. 18713 ["[I]f a . . . state law separately provides for recovery of attorneys' fees independent of claims or defenses arising from the seller's misconduct, nothing in the Rule limits such recovery."].) But where "the holder's liability for fees is based on claims against the seller that are preserved by the Holder Rule Notice, the payment that the consumer may recover from the holder—including any recovery based on attorneys' fees—cannot exceed the amount the consumer paid under the contract." (*Ibid.*)

13

Accordingly, we conclude that, to the extent section 1459.5 authorizes a plaintiff's total recovery—including attorney fees—for a Holder Rule claim to exceed the amount the plaintiff paid under the contract, it directly conflicts with the Holder Rule and is therefore preempted.[6]

DISPOSITION

The judgment is affirmed. Ally is awarded its costs on appeal.

---

[6] Plaintiff's appeal involves only his claim for attorney fees, and does not involve any claims for costs, expenses, or prejudgment interest. We therefore express no opinion on the Holder Rule's application to these items, or on any preemption of section 1459.5 as to them. (See *Lafferty, supra,* 25 Cal.App.5th at p. 405 [because "[t]he California statutes providing for costs and prejudgment interest apply to actions as a whole rather than to individual causes of action such as that provided by the Holder Rule," the Holder Rule's limitation on recovery does not apply to costs or prejudgment interest]; § 1459.5 [authorizing recovery of a plaintiff's costs and expenses on a Holder Rule claim without consideration of the Holder Rule's limitation on recovery].)

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.

(*Spikener v. Ally Financial, Inc.* / A157301)

15

A157301 / Spikener v. Ally Financial, Inc.

Trial Court:  Superior Court of Alameda County

Trial Judge: Honorable Stephen Pulido

Counsel:  Law Office of Kevin Faulk and Kevin M. Faulk; Rosner, Barry & Babbitt, Hallen D. Rosner, Arlyn L. Escalante, and Tsolik Kazandjian, for Plaintiff and Appellant.

Severson & Werson, John B. Sullivan, Andrew S. Elliott, and Jan T. Chilton, for Defendant and Respondent.