Filed 12/16/21  Flores v. Westlake Services CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSE SANTOS HERNANDEZ FLORES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>WESTLAKE SERVICES, LLC,<br><br>    Defendant and Respondent. | B308288<br><br>(Los Angeles County<br>Super. Ct. No. BC723711) |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Reversed and remanded with directions.

Rosner, Barry & Babbitt, Hallen D. Rosner and Arlyn L. Escalante, for Plaintiff and Appellant.

Madison Law, Jenos Firouznam-Heidari, James S. Sifers and Brett K. Wiseman for Defendant and Respondent.

In this action arising out of a retail installment sales contract, plaintiff and appellant Jose Santos Hernandez Flores (Plaintiff) appeals an order that denied his motion for attorney fees, costs and expenses against Westlake Services, LLC (Westlake) and Southgate Auto, Inc. (Southgate), and for prejudgment interest against Westlake.

Guided primarily by *Pulliam v. HNL Automotive Inc.* (2021) 60 Cal.App.5th 396 (*Pulliam*),[1] we conclude that title 16, section 433.2 of the Code of Federal Regulations (CFR) (the Holder Rule) does not cap the attorney fees, costs, expenses, or prejudgment interest that Plaintiff may recover from Westlake, the creditor-assignee, or from Southgate, the seller. Therefore, we reverse and remand for the trial court to redetermine the matter.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Plaintiff purchased a used 2014 Toyota Corolla from Southgate, doing business as Express Auto Lending, pursuant to a retail installment sale contract, for a purchase price of $14,300. The financing was for a term of 66 months, at an annual percentage rate of 17.89 percent, for a total finance charge of $8,452.22.

The contract included the following language from title 16, section 433.2 of the CFR: "NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES

---

[1] On April 28, 2021, the California Supreme Court granted review in *Pulliam*. The order granting review specifies that the Court of Appeal's opinion in *Pulliam* remains citable for its persuasive value. (No. S267576, order filed Apr. 28, 2021.)

2

OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." This language is commonly referred to as the Holder Rule. (*Pulliam*, *supra*, 60 Cal.App.5th at p. 402.)

Following Plaintiff's purchase of the vehicle, Westlake accepted assignment of the retail installment sales contract and became the holder thereof.

In October 2018, Plaintiff filed this action against Westlake and Southgate. In the operative first amended complaint, Plaintiff pled: he specifically told Southgate that he was looking for a vehicle that had never been involved in an accident; Southgate represented that the subject vehicle had not been in an accident; after purchasing the vehicle Plaintiff discovered that the vehicle had actually been involved in an accident and had sustained structural damage. Plaintiff pled violations of the Consumers Legal Remedies Act (CLRA) (Civil Code § 1750 et seq.),[2] the Song-Beverly Consumer Warranty Act (Song-Beverly) (§ 1790 et seq.), and section 1632 (failure to provide Spanish language translation of contract), as well as causes of action for unfair competition (Bus. & Prof. Code, § 17200), and fraudulent and negligent misrepresentation.

Westlake and Southgate unsuccessfully moved to compel arbitration. Westlake and Southgate then filed a joint answer to the complaint, denying all allegations and asserting numerous affirmative defenses.

Westlake and Southgate's counsel, Madison Law, subsequently moved to be relieved as counsel for Southgate. The motion was granted. In July 2019, because Southgate had failed

---

[2]      All unspecified statutory references are to the Civil Code.

to retain new counsel, the trial court struck Southgate's answer and entered its default.

In January 2020, the parties reached a partial settlement. Under the settlement, Southgate, to whom Westlake had reassigned the contract, waived the balance due; Westlake acknowledged that Plaintiff owed nothing further on the contract; Westlake would pay Plaintiff $5,712.42, reflecting the refund of his down payment and monthly installment payments; and Plaintiff would file a motion to recover attorney fees, costs, expert expenses (Code Civ. Proc., § 998), and prejudgment interest, within 30 days of receiving the payment from Westlake.

On March 11, 2020, Plaintiff filed the motion which is the subject of this appeal, seeking recovery of attorney fees, costs and expenses against Westlake and Southgate, as well as prejudgment interest against Westlake.[3] Plaintiff sought $66,766.97 in attorney fees, costs, and expenses against Westlake and Southgate, jointly and severally, and prejudgment interest of $2,981.16 against Westlake. Plaintiff asserted that as the prevailing party, he was entitled to recover attorney fees pursuant to the CLRA (§ 1780, subd. (e)) and Song-Beverly (§ 1794, subd. (d)), and pursuant to section 1459.5, which authorizes recovery of attorney fees, costs and expenses against a holder, i.e., Westlake.[4][5] Plaintiff anticipated that Westlake would argue

---

[3]     We note the motion was only served on Westlake, as Southgate was in default.

[4]     Section 1459.5 states: "A plaintiff who prevails on a cause of action against a defendant named pursuant to Part 433 of Title 16 of the Code of Federal Regulations or any successor thereto, or pursuant to the contractual language required by that part or any successor thereto, may claim attorney's fees, costs, and

4

that pursuant to *Lafferty v. Wells Fargo Bank, N.A.* (2018) 25 Cal.App.5th 398 (*Lafferty*), a holder of a retail installment sales contract cannot be held liable for attorney fees, costs, or expenses.  Plaintiff asserted that *Lafferty* was superseded by section 1459.5, which became effective January 1, 2020, and which allows a prevailing plaintiff to recover attorney fees, costs, and expenses from the holder to the fullest extent permissible against the seller.

In opposition, Westlake argued that Plaintiff had no basis to recover attorney fees, costs, or any amount in excess of the Holder Rule cap from Westlake.  Westlake relied on *Spikener v. Ally Financial, Inc.* (2020) 50 Cal.App.5th 151 (*Spikener*), which held that section 1459.5 conflicts with, and is therefore preempted by, the federal Holder Rule, and thus, when a debtor asserts a claim against a holder pursuant to the Holder Rule, the debtor's recovery, including any attorney fees based on the Holder Rule claim, cannot exceed the amount the debtor paid under the contract.  (*Id.* at p. 155.)

On August 10, 2020, the matter came on for a hearing on Plaintiff's motion, as well as on an order to show cause re dismissal due to the settlement.  The trial court ruled that *Spikener* is "on point.  Both Defendants have paid the maximum amount and [are] not obligated to pay more per *Spikener*."  The

---

expenses from that defendant to the fullest extent permissible if the plaintiff had prevailed on that cause of action against the seller."

[5]      On March 26, 2021, Plaintiff filed an unopposed request for judicial notice of the legislative history of section 1459.5.  Ruling on the motion previously having been deferred, the motion is now granted.  (Evid. Code, §§ 452, subd. (c), 459.)

court denied Plaintiff's motion and ordered the action dismissed, noting that no further proceedings were pending.

On October 6, 2020, Plaintiff filed a timely notice of appeal from the August 10, 2020 order.

## CONTENTIONS

Plaintiff contends: he is entitled to attorney fees, costs and prejudgment interest for prevailing under the CLRA and Song-Beverly; this court should follow *Pulliam* in finding that the Holder Rule does not preclude statutory attorney fees, costs and prejudgment interest, and that section 1459.5 is not preempted; in the alternative, costs and attorney fees are recoverable from the holder even if attorney fees were limited; and Plaintiff is also entitled to attorney fees and costs under section 1717.[6]

## DISCUSSION

1. *Standard of appellate review.*

The appeal requires this court to determine whether the Holder Rule precludes Plaintiff from recovering attorney fees, costs, expenses, and prejudgment interest in excess of the sums paid on the contract. The issue presents a pure question of law which we review de novo. (*Mercury Ins. Co. v. Lara* (2019) 35 Cal.App.5th 82, 97.)

---

[6] Plaintiff's motion did not request attorney fees pursuant to section 1717. Therefore, that issue is not properly before this court, as "theories not raised in the trial court cannot be asserted for the first time on appeal." (*Hewlett Packard Co. v. Oracle Group* (2021) 65 Cal.App.5th 506, 548.) Plaintiff cannot assert error based on the trial court's failure to grant him relief that he did not request.

2. *Overview of the relevant law.*

As indicated, the Holder Rule, promulgated by the Federal Trade Commission (FTC), requires consumer credit contracts to include the following notice: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."  (16 C.F.R. § 433.2)

In 2018, *Lafferty* held that a plaintiff is limited under the plain meaning of the Holder Rule to recovering no more than the sum that was paid under the terms of the installment contract.  (*Lafferty*, *supra*, 25 Cal.App.5th at p. 848.)  *Lafferty* concluded that "a consumer cannot recover more under the Holder Rule cause of action than what has been paid on the debt regardless of what kind of a component of the recovery it might be—whether compensatory damages, punitive damages, or attorney fees."  (*Id.* at p. 855, italics omitted.)

In 2019, after *Lafferty* was decided, the FTC construed the Holder Rule in the same manner as the *Lafferty* court.  (*Spikener*, *supra*, 50 Cal.App.5th at pp. 154, 158.)  At that time, the FTC rejected all proposed modifications to the Holder Rule, retained the Holder Rule in its present form (*Pulliam*, *supra*, 60 Cal.App.5th at p. 418), and "issued a confirmation of the Holder Rule (the Rule Confirmation).  (84 Fed.Reg. 18711 (May 2, 2019).) [¶]  As relevant here, the Rule Confirmation noted that several of the comments received 'addressed whether the Rule's limitation on recovery to "amounts paid by the debtor" allows or should

7

allow consumers to recover attorneys' fees above that cap . . . ." (84 Fed.Reg., *supra*, at p. 18713.)  After discussing the substance of the comments, the Rule Confirmation provided as follows:  'We conclude that if a federal or state law separately provides for recovery of attorneys' fees independent of claims or defenses arising from the seller's misconduct, nothing in the Rule limits such recovery.  Conversely, if the holder's liability for fees is based on claims against the seller that are preserved by the Holder Rule Notice, the payment that the consumer may recover from the holder—including any recovery based on attorneys' fees—cannot exceed the amount the consumer paid under the contract.  Claims against the seller for attorneys' fees or other recovery may also provide a basis for set off against the holder that reduces or eliminates the consumer's obligation.  The Commission does not believe that the record supports modifying the Rule to authorize recovery of attorneys' fees from the holder, based on the seller's conduct, if that recovery exceeds the amount paid by the consumer.'  (*Ibid*.)"  (*Spikener*, *supra*, 50 Cal.App.5th at p. 158.)

In 2019, in response to *Lafferty*, the California Legislature adopted section 1459.5 (see fn. 4, *ante*; Stats. 2019, ch. 116, § 1), which provides that the Holder Rule's limitation on recovery does not apply to attorney fees, costs and expenses.  (*Spikener*, *supra*, 50 Cal.App.5th at pp. 154-155.)

In 2020, the *Spikener* court concluded the FTC's construction of the Holder Rule is entitled to deference. (*Spikener*, *supra*, 50 Cal.App.5th at pp. 158-159.)  It further concluded that, to the extent section 1459.5 authorizes a plaintiff to recover attorney fees on a Holder Rule claim even if that results in a total recovery greater than the amount the plaintiff

8

paid under the contract, section 1459.5 conflicts with, and is therefore preempted by, the Holder Rule. (*Spikener*, at pp. 162-163.) Accordingly, *Spikener* held that when a debtor asserts a claim against a holder pursuant to the Holder Rule, the debtor's recovery—including any attorney fees based on the Holder Rule claim—cannot exceed the amount the debtor paid under the contract. (*Id.* at p. 162.)

In 2021, during the pendency of this appeal, *Pulliam* was decided by Division Five of this court. *Pulliam* disagreed with both *Lafferty* and *Spikener*. *Pulliam* rejected *Lafferty*'s interpretation of the Holder Rule, and concluded that the Holder Rule's cap does not apply to attorney's fees. (*Pulliam*, *supra*, 60 Cal.App.5th at p. 412.) *Pulliam* also disagreed with *Spikener*'s conclusion regarding the binding nature of the FTC's contrary interpretation in its Rule Confirmation. (*Pulliam*, at p. 412.)

As discussed below, we find *Pulliam* persuasive, and further conclude that the Holder Rule does not preclude Plaintiff from recovering attorney fees, costs, expenses and prejudgment interest in excess of the amount that Plaintiff paid under the contract.

3. *The* Pulliam *court's rationale for construing the Holder Rule as not capping the attorney fees that are recoverable, and for declining to defer to the FTC's Rule Confirmation.*

*Pulliam* framed the issue as follows: "The statutory interpretation question for us is: Does the word 'recovery,' as used in the Holder Rule, include attorney's fees. If 'recovery' includes attorney's fees, then the Holder Rule's limitation that recovery 'by the debtor shall not exceed amounts paid by the debtor hereunder,' means that the court would add the attorney's fees to the compensatory award and limit the total recovery to

the amount the debtor paid under the purchase agreement." (*Pulliam*, *supra*, 60 Cal.App.5th at p. 413.)

Pulliam began with the dictionary definition of recovery, and noted it "focuses on damages, i.e. restoring money that was taken away from the plaintiff, and does not expressly address attorney's fees." (*Pulliam*, *supra*, 60 Cal.App.5th at p. 413.)

*Pulliam* also examined the FTC's earlier position on the question, and noted that in the past, "the FTC's position on the limitation on recovery was that the rule limited consequential damages, not attorney's fees. To include attorney's fees in the Holder Rule's limitation on recovery would be out of sync with its objective of reallocating the costs of the seller's misconduct from the consumer back to the seller and creditor. Attorney's fees 'is a form of compensation that, along with an award of actual damages, permits the consumer to be made whole. . . . [O]ne of the objectives of the Holder Rule is to internalize the costs of a seller's misconduct. Those costs include the expense of obtaining compensation for injury caused by the seller's misconduct.' [Citation.]" (*Pulliam*, *supra*, 60 Cal.App.5th at pp. 415-416.)

*Pulliam* added, "One commentator suggested that if the creditor is not responsible for attorney fees and costs, there would be an incentive to intentionally prolong litigation and cause a consumer to spend more prosecuting the case than the recovery available under the sales contract. 'Exposure to liability for fees and costs . . . has a tendency to cut down on litigation and encourage settlement because commercial parties have less incentive to stall the litigation until the case goes away. This ability to stall is especially implicated when the commercial parties have the resources to continue the litigation while wearing down the resources of the consumer.' [Citation.] 'The

10

statutory availability of attorney's fees and costs to a prevailing consumer is another way to level the playing field between the consumer and commercial parties to the transaction.' [Citation.] Both consumer rights and the rule's purpose would be frustrated if attorney fees were not recoverable from both the seller and the creditor-assignee." (*Pulliam*, *supra*, 60 Cal.App.5th at p. 416.)[7]

     *Pulliam* then concluded the FTC's recent Rule Confirmation was not entitled to dispositive deference. (*Pulliam*, *supra*, 60 Cal.App.5th at p. 419.) It noted that in *Kisor v. Wilkie* (2019) —— U.S. ——, 139 S.Ct. 2400, 2408, 204 L.Ed.2d 841 (*Kisor*), the United States Supreme Court reaffirmed the doctrine of deference to an agency's reading of its own, genuinely ambiguous regulations, while reaffirming "the limitations of that doctrine. Particularly, in considering deference, 'a court must make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight. [Citations.]' [Citation.] 'The inquiry on this dimension does not reduce to any exhaustive test.' [Citation.] However, the court has identified certain markers for identifying when regulatory deference is and is not appropriate. [Citation.] [¶] The . . . markers the court identified were: First, the 'regulatory interpretation must be one actually made by the agency. In other words, it must be the agency's "authoritative" or "official position," rather than any more ad hoc statement not reflecting the agency's views. [Citation.]' [Citation.] 'Next, the agency's

---

[7]     We observe that if a transaction involves a relatively inexpensive vehicle, a commercial party would have an even greater incentive to prolong the litigation if the consumer's total recovery, including attorney fees, were capped by the amount the consumer paid under the contract.

interpretation must in some way implicate its substantive expertise.' [Citation.] 'Finally, an agency's reading of a rule must reflect "fair and considered judgment" to receive . . . deference. [Citation.]' [Citation.] A court should decline to defer to a convenient litigation position or post hoc rationalization. [Citation.]" (*Pulliam*, *supra*, 60 Cal.App.5th at p. 419.)

Upon considering these factors, *Pulliam* concluded the FTC's Rule Confirmation was not entitled to conclusive deference. (*Pulliam*, *supra*, 60 Cal.App.5th at p. 420.) Among other things, it found that resolution of the issue was not "easily within the FTC's substantive expertise. This is so for two reasons. (1) Resolution of the issue may turn on the particular state statute providing for attorney's fee recovery at issue, and whether that statute is intended to be punitive against the payor or simply to make the payee whole. (2) As illustrated by the FTC's request for comments which led to the Rule Confirmation, the FTC sought to exercise its judgment based on data regarding the effect of the rule (or any proposed rule change) on consumers and businesses. No commenter provided the FTC with data on the costs and benefits to consumers or businesses in different jurisdictions based on the availability of attorney's fees or any limitations placed on them. Thus, the FTC's statement regarding attorney's fees in its Rule Confirmation was not an exercise of its substantive expertise, but simply a position taken after limited arguments were made on each side." (*Pulliam*, *supra*, 60 Cal.App.5th at p. 420.)

Further, "given the informal nature of the FTC's consideration of the issue– one that followed a request for comments that did not mention attorneys' fees – we are not convinced that the confirmation truly represented the ' "fair and

considered judgment" [necessary] to receive . . . deference.' (*Kisor*, *supra*, 139 S.Ct. at p. 2416.)" (*Pulliam*, *supra*, 60 Cal.App.5th at p. 420.)

Finally, "although we cannot say the position taken in the Rule Confirmation was a change in interpretation – as the FTC had not previously interpreted the rule at all – it did, in fact, address an issue never previously addressed, and undermined the existing practice in those jurisdictions in which attorney fees in excess of the cap had been, and were being, imposed as a matter of course." (*Pulliam*, *supra*, 60 Cal.App.5th at p. 420.)

Based on the above rationale, we agree with *Pulliam* that the Holder Rule does not limit a defendant's liability for attorney fees, and that the FTC's recent Rule Confirmation is not entitled to conclusive deference. We now turn to the discrete issues raised by the instant appeal.

4. *Trial court erred in denying Plaintiff's motion for attorney fees, costs, expenses and prejudgment interest on the ground that both defendants' liability for those items is capped by the Holder Rule.*

*The inapplicability of the Holder Rule cap to attorney fees.* As indicated, the trial court ruled that *Spikener* is "on point. Both Defendants have paid the maximum amount and [are] not obligated to pay more per *Spikener*." As discussed above, we in turn agree with *Pulliam* that the Holder Rule cap does not include attorney fees within its limit on recovery. (*Pulliam*, *supra*, 60 Cal.App.5th at pp. 409-422.)

*The inapplicability of the Holder Rule cap to costs and expenses.* The *Lafferty* court held the right to costs of suit under Code of Civil Procedure section 1032, subdivision (b), is not curtailed by the Holder Rule, which is silent about cost awards

13

under state law to a prevailing party in an action.  (*Lafferty*, *supra*, 25 Cal.App.5th at p. 415.)  Further, although the *Pulliam* decision did not discuss the impact of the Holder Rule cap on costs or expenses, as those issues were not raised on appeal (*Pulliam*, *supra*, 60 Cal.App.5th at p. 403, fn. 2), by parity of reasoning, *Pulliam*'s rationale for concluding that the Holder Rule cap does not include attorney fees within its limit on recovery is equally applicable to the items of costs and expenses. Those items, just like attorney fees, are incurred in the process of recovering "damages, i.e., restoring money that was taken away from the plaintiff." (*Pulliam*, *supra*, 60 Cal.App.5th at p. 413.) Additionally, if the Holder Rule cap were to extend to costs and expenses, a commercial defendant would have greater " 'incentive to stall the litigation until the case goes away.' " (*Id*. at p. 416.) We conclude *Pulliam*'s determination that the Holder Rule cap does not apply to attorney fees is equally applicable to the items of costs and expenses.

*The inapplicability of the Holder Rule cap to prejudgment interest*.  In this regard, *Lafferty*, *supra*, 25 Cal.App.5th 398, is on point.  It states that section 3287, pertaining to prejudgment interest, "applies to every person entitled to recover damages— without reference to the underlying cause(s) of action for which damages are awarded.  Because prejudgment interest under Civil Code section 3287 focuses on the person rather than the cause of action, the limitation on recovery under the Holder Rule cause of action does not affect entitlement to prejudgment interest." (*Lafferty*, *supra*, 25 Cal.App.5th at p. 416.)

*The impact of section 1459.5*.  It is unnecessary to address Westlake's argument that section 1459.5, allowing a plaintiff to recover attorney's fees, costs and expenses, is preempted by

federal law.  Again, *Pulliam* is on point.  "Because we conclude the Holder Rule cap does not include attorney's fees [or costs or expenses] within its limit on recovery and that the FTC's interpretation to the contrary is not entitled to deference, the Holder Rule is consistent with section 1459.5, and we need not address whether section 1459.5 independently applies." (*Pulliam*, *supra*, 60 Cal.App.5th at p. 422.)

*The role of Southgate, the defaulted seller*.  In denying Plaintiff's motion, the trial court ruled that both defendants had paid the maximum amount and were not obligated to pay more, per *Spikener*.  On appeal, Plaintiff seeks reversal and remand as to both Southgate and Westlake.  We agree that the Holder Rule cap is inapplicable to the various items that Plaintiff sought in his motion, and therefore the order must be reversed as to both Westlake and Southgate.  As we have noted, Southgate was in default, and thus it is not a respondent in this appeal.  In its respondent's brief, Westlake argues in a footnote that because Southgate was not served with the notice of appeal and is not a respondent in this appeal, "any relief requested as against Southgate is inappropriate."  However, Westlake lacks standing to assert any arguments on behalf of Southgate, its defaulted codefendant.  Moreover, after Southgate's default was entered, it was no longer an active party in the litigation and thus was not entitled to any further notices.  (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1301.)  Therefore, reversal is proper as to Southgate, irrespective of its absence as a respondent.

## DISPOSITION

The August 10, 2020 order denying Plaintiff's motion for attorney fees, costs, expenses, and prejudgment interest against Westlake and Southgate is reversed, and the matter is remanded for the trial court to redetermine the issues without regard to the Holder Rule cap on liability. Plaintiff shall recover his costs on appeal as against Westlake.

**NOT TO BE PUBLISHED**


VIRAMONTES, J.*


We concur:



EDMON, P.J.



EGERTON, J.

_____

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16