Filed 1/28/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JONATHAN ALEJANDRO MELENDEZ,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>WESTLAKE SERVICES, LLC,<br><br>     Defendant and Appellant. | B306976<br><br>Los Angeles County<br>Super. Ct. No. BC722737 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Madison Law, Jenos Firouznam-Heidari, James S. Sifers and Brett K. Wiseman for Defendant and Appellant.

Rosner, Barry & Babbitt, Hallen D. Rosner, Arlyn L. Escalante and Michael A. Klitzke for Plaintiff and Respondent.

_____

## SUMMARY

The Federal Trade Commission's "holder rule" makes the holder of a consumer credit contract subject to all claims the debtor could assert against the seller of the goods or services obtained under the contract (or its proceeds).  The holder rule also caps the debtor's recovery from the holder to the amount paid by the debtor under the contract.  The question in this and several recent or pending cases is whether this limitation on recovery precludes the debtor from recovering attorney fees the debtor incurs in obtaining redress from the holder.  We hold, agreeing with *Pulliam v. HNL Automotive Inc.* (2021) 60 Cal.App.5th 396, review granted April 28, 2021, S267576 (*Pulliam*), that the limitation does not preclude recovery of attorney fees.  We further hold the limitation does not preclude recovery of costs, nonstatutory costs, or prejudgment interest.

We affirm the trial court's judgment.

## FACTS

In March 2018, plaintiff Jonathan Alejandro Melendez purchased a used 2015 Toyota Camry from Southgate Auto, Inc., doing business as Express Auto Lending, under a retail installment sales contract.  Southgate assigned the contract to defendant Westlake Services, LLC, doing business as Westlake Financial Services.

In September 2018, plaintiff sent defendant a notice alleging Southgate violated the Consumer Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.) and demanding rescission, restitution and an injunction.  Plaintiff later sued both Southgate and defendant. Plaintiff alleged violations of the CLRA, the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), Civil Code section 1632 (requiring translation of contracts negotiated primarily in Spanish), and the unfair competition law (Bus. & Prof. Code,

2

§ 17200 et seq.), plus causes of action for fraud and negligent misrepresentation.

During the litigation, defendant assigned the contract back to Southgate. In December 2019, default was entered against Southgate, and plaintiff and defendant settled the case.

Under the settlement, defendant agreed to pay plaintiff $6,204.68 (representing a $2,500 down payment and $3,704.68 plaintiff paid in monthly payments). The parties acknowledged that Southgate was the current holder of the contract and would waive any balance due, so that plaintiff would have no further obligations under the contract. The parties further agreed plaintiff could file a motion for attorney fees, costs, expenses and prejudgment interest with respect to his claims against defendant; plaintiff was the prevailing party on all claims; defendant was not precluded from disputing plaintiff's entitlement to attorney fees and the other items; and defendant was entitled to assert all available defenses to plaintiff's motion, "including the defense that no fees at all should be awarded against it as a Holder as that term is defined at law."

The trial court granted plaintiff's motion. The court awarded $115,987.50 in attorney fees; $2,956.62 in prejudgment interest; and costs of $14,295.63, for a total of $133,239.75, jointly and severally against defendant, Southgate and two other defendants.

Defendant filed a timely appeal.

## DISCUSSION

**1.     The Legal Background**

The holder rule is contained in a regulation issued by the Federal Trade Commission (FTC) in 1975. It is a consumer protection measure that "abrogate[s] the holder in due course rule for consumer installment sale contracts that are funded by a commercial lender." (*Lafferty v. Wells Fargo Bank, N.A.* (2018)

3

25 Cal.App.5th 398, 410 (*Lafferty*).)  The regulation (16 C.F.R. § 433.2 (2022)) makes it an unfair or deceptive act or practice for a seller to take or receive a consumer credit contract which does not contain the following provision in large, boldface type:  "Notice  [¶] Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."  (Capitalization omitted.)

" ' " 'In abrogating the holder in due course rule in consumer credit transactions, the FTC preserved the consumer's claims and defenses against the creditor-assignee.  The FTC rule was therefore designed to reallocate the cost of seller misconduct to the creditor.  The commission felt the creditor was in a better position to absorb the loss or recover the cost from the guilty party—the seller.' " ' " (*Lafferty, supra,* 25 Cal.App.5th at p. 411.)

As mentioned at the outset, the principal point at issue is whether the limitation on recovery to "amounts paid by the debtor hereunder" means a consumer cannot recover attorney fees from the creditor-assignee.  (16 C.F.R. § 433.2 (2022).)  In California, there were no published precedents on this issue for the 40 years after the rule was issued.  Then, in 2018, *Lafferty* held that the plaintiffs were "limited under the plain meaning of the Holder Rule to recovering no more than" the amount they paid under terms of their loan.  (*Lafferty, supra,* 25 Cal.App.5th at p. 405; *ibid.* ["the trial court properly denied the [plaintiffs'] request for attorney fees and nonstatutory costs in excess of their recovery of the amount they actually paid under the loan"].)

The Legislature promptly passed a statute "to restore California courts' interpretation of the Holder Rule . . . to the meaning it had for more than 40 years until [the *Lafferty*] decision."

4

(Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1821 (2019–2020 Reg. Sess.) Apr. 9, 2019, pp. 1, 3–6.)  The legislative analysis explains that holder-rule cases "typically settle before trial," and "the relatively low actual damages against lenders make appeals uneconomical," so "there are few pre-*Lafferty* California appellate decisions addressing whether attorney's fees are limited by the Holder Rule."  (Analysis of Assem. Bill No. 1821, *supra,* at p. 4.)  One exception was an unpublished case concluding the holder-rule limitation did not apply to attorney fees; the legislative analysis concluded that case's holding "represents the consensus among California courts before 2018:  that the Holder Rule does not cap attorney's fees, only the plaintiff's damages."  (Analysis of Assem. Bill No. 1821, *supra,* at p. 5.)

Assembly Bill No. 1821 became law and went into effect on January 1, 2020.  It is codified as Civil Code section 1459.5 and states:  "A plaintiff who prevails on a cause of action against a defendant named pursuant to Part 433 of Title 16 of the Code of Federal Regulations or any successor thereto, or pursuant to the contractual language required by that part or any successor thereto, may claim attorney's fees, costs, and expenses from that defendant to the fullest extent permissible if the plaintiff had prevailed on that cause of action against the seller."  (Stats. 2019, ch. 116, § 1, as amended by Stats. 2020, ch. 370, § 28.)

Meanwhile, in other states, some courts found the holder rule's cap precluded recovery of attorney fees, others found it did not, and others imposed attorney fees on holders without addressing the issue.  (See *Pulliam, supra,* 60 Cal.App.5th at p. 411 (citing cases).)

Also, in December 2015 the FTC requested comments on "the overall costs and benefits, and regulatory and economic impact, of . . . the 'Holder Rule,' as part of the agency's regular review of all its

5

regulations and guides." (80 Fed.Reg. 75018 (Dec. 1, 2015).) In May 2019, the FTC completed its regulatory review, and determined to retain the holder rule in its present form. (84 Fed.Reg. 18711 (May 2, 2019).) In issuing its "[c]onfirmation of rule," among other things the FTC discussed six comments it received addressing "whether the Rule's limitation on recovery to 'amounts paid by the debtor' allows or should allow consumers to recover attorneys' fees above that cap." (*Id.* at p. 18713.) The FTC stated: "Four comments supported having no cap on recovery of attorneys' fees, while one opposed it and one proposed a set fee schedule in some circumstances. According to the comments, some courts have permitted fees above the cap, while others have not." (*Id.* at p. 18713, fn. omitted.)

After describing the comments and its view of the rule, the FTC summarized: "The Commission does not believe that the record supports modifying the Rule to authorize recovery of attorneys' fees from the holder, based on the seller's conduct, if that recovery exceeds the amount paid by the consumer." (84 Fed.Reg., *supra,* at p. 18713.) The FTC explained: "We conclude that if a federal or state law separately provides for recovery of attorneys' fees independent of claims or defenses arising from the seller's misconduct, nothing in the Rule limits such recovery. Conversely, if the holder's liability for fees is based on claims against the seller that are preserved by the Holder Rule Notice, the payment that the consumer may recover from the holder—including any recovery based on attorneys' fees—cannot exceed the amount the consumer paid under the contract. Claims against the seller for attorneys' fees or other recovery may also provide a basis for set off against the holder that reduces or eliminates the consumer's obligation." (*Ibid.*)

6

In 2020, the First District decided *Spikener v. Ally Financial, Inc.* (2020) 50 Cal.App.5th 151 (*Spikener*). *Spikener* held the FTC's interpretation of the holder rule in 2019 was entitled to deference, and was "dispositive on the Holder Rule's application to attorney fees." (*Spikener,* at pp. 158, 158–160.) *Spikener* held that, "to the extent [Civil Code] section 1459.5 authorizes a plaintiff's total recovery—including attorney fees—for a Holder Rule claim to exceed the amount the plaintiff paid under the contract, it directly conflicts with the Holder Rule and is therefore preempted." (*Id.* at pp. 162–163.)

Finally, in *Pulliam, supra,* 60 Cal.App.5th 396, review granted, Division Five disagreed with *Lafferty*, concluding "the Holder Rule's cap itself does not apply to attorney fees." (*Pulliam,* at pp. 412, 412–416.) *Pulliam* also disagreed with *Spikener* (*Pulliam,* at pp. 421–422)*,* concluding "the FTC's interpretation to the contrary is not entitled to deference [and] the Holder Rule is consistent with [Civil Code] section 1459.5." (*Pulliam,* at pp. 422, 416–422.)

2. **Contentions and Conclusions**
   a. **Attorney fees**

We conclude, consonant with *Pulliam*, that the holder-rule limitation on recovery does not apply to attorney fees, and the FTC's contrary interpretation is not entitled to deference. As in *Pulliam,* we need not consider Civil Code section 1459.5, which is consistent with our construction of the holder rule.

We summarize the pertinent points, which are elaborated in detail in *Pulliam*.

*Pulliam* begins by addressing the statutory interpretation issue: whether the word "recovery" as used in the holder rule includes attorney fees. *Pulliam* concludes it does not, first citing the dictionary definition of "recovery" as the " 'regaining or

7

restoration of something lost or taken away.' " (*Pulliam, supra,* 60 Cal.App.5th at p. 413.)  This definition, the court says, "focuses on damages, i.e. restoring money that was taken away from the plaintiff, and does not expressly address attorney fees." (*Ibid.*) (Defendant argues that *Pulliam* relied on the current definition of "recovery" in Black's Law Dictionary (11th ed. 2019, available at Westlaw), but should have relied on the definition in the edition used in 1975 when the holder rule was issued.  This gets defendant nowhere, because that definition includes similar language:  "the obtaining, by [a] judgment, of some right or property which has been taken or withheld from [a person]."  (Black's Law Dict. (rev. 4th ed. 1968) p. 1440, col. 1.)

Next, *Pulliam* rejects precedents relied on in *Lafferty*, in contexts outside the holder rule, that discuss recovery as a broad term including attorney fees.  (*Pulliam, supra,* 60 Cal.App.5th at p. 413.)  *Pulliam* describes the legislative history of the holder rule in detail (*Pulliam,* at pp. 413–415), and recounts subsequent statements at a 1976 congressional hearing by the acting director of the FTC's Bureau of Consumer Protection (*id.* at pp. 414–415).  Among other things, the acting director recounted "one express cautionary limitation on a creditor's exposure.  The consumer may never recover consequential damages under the provision which exceed the amount of the credit contract." (*Pulliam,* at p. 415.)

*Pulliam* observed that the acting director's comments "indicate that at the time the FTC's position on the limitation on recovery was that the rule limited consequential damages, not attorney's fees."  (*Pulliam, supra,* 60 Cal.App.5th at p. 415.) Including attorney fees in the limitation on recovery, the court said, "would be out of sync with [the holder rule's] objective of reallocating the costs of the seller's misconduct from the consumer back to the seller and creditor." (*Ibid.*)  Similarly, in staff

8

guidelines on the rule issued in 1976, the staff, discussing the limitation on the creditor's liability, stated that "[t]he consumer may not assert [against] the creditor any rights he might have against the seller for additional consequential damages and the like." (41 Fed.Reg. 20023 (May 14, 1976).)

*Pulliam* ultimately concludes that "[b]oth consumer rights and the rule's purpose would be frustrated if attorney fees were not recoverable from both the seller and the creditor-assignee." (*Pulliam, supra,* 60 Cal.App.5th at p. 416.) We agree with this analysis.

*Pulliam* then addresses the FTC's 2019 rule confirmation, described above, and concludes the FTC's contrary interpretation of the holder rule is not entitled to deference. (*Pulliam, supra,* 60 Cal.App.5th at pp. 419–422.) We agree with this analysis as well.

After describing the rule confirmation proceeding and comments the FTC received (*Pulliam, supra,* 60 Cal.App.5th at pp. 416–419), *Pulliam* analyzed the doctrine of deference to an agency's interpretation of its own regulations, as described by the high court in *Kisor v. Wilkie* (2019) 588 U.S. ___ [139 S.Ct. 2400] (*Kisor*). (*Pulliam,* at pp. 419–420.) *Kisor* reaffirmed the doctrine and its limitations, instructing courts to "make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight," and indicated there is no "exhaustive test." (*Kisor, supra,* 139 S.Ct. at p. 2416.) *Kisor* describes several "especially important markers for identifying" when deference "is and is not appropriate." (*Ibid.*) Briefly, the regulatory interpretation must be the agency's authoritative or official position; must "in some way implicate its substantive expertise"; must reflect "fair and considered judgment"; and must not create unfair surprise to regulated parties, which may occur

when an agency substitutes one view of a rule for another. (*Kisor, supra,* 139 S.Ct. at pp. 2416–2418.)

*Pulliam* analyzes each of the *Kisor* factors (*Pulliam, supra,* 60 Cal.App.5th at p. 420), and rejects *Spikener*'s analysis as incorrect (*Pulliam,* at p. 421). Among other points, the court in *Pulliam* was not convinced the FTC's rule confirmation "truly represented the ' "fair and considered judgment" [necessary] to receive . . . deference.' " (*Pulliam,* at p. 420.) The court's conclusion is persuasive:

"[W]e find significant that the agency initially had not previously spoken on the issue, and chose to express its opinion without seeking formal input on it. Instead, the FTC had requested comments on the Holder Rule in general terms, seeking arguments on modifying the rule only if supported by data setting forth the impact of any proposed modifications on consumers and businesses. It did not receive that data. Had the FTC issued a modification based on an analysis of submitted data, or after consideration of arguments submitted in response to an express notice, it would have made a stronger case for deference. Instead, the agency, based on no data and limited argument, spoke on an issue on which it had previously remained silent for decades, and had not given notice of an intent to speak. This falls short of the type of considered analysis entitled to dispositive deference." (*Pulliam, supra,* 60 Cal.App.5th at p. 421.)

Accordingly, we conclude the holder-rule limitation on recovery does not preclude recovery of attorney fees, and the FTC's contrary interpretation is not entitled to deference.[1] These

_____

[1] After briefing in this case and before oral argument, plaintiff notified the court and defendant that the FTC has issued an advisory opinion addressing the holder rule. The advisory opinion states that *Pulliam* and cases in other states "correctly conclud[e]

10

conclusions eliminate any need to consider defendant's further contention that Civil Code section 1459.5 is preempted by the holder rule.

### b. Costs, expenses, and prejudgment interest

Defendant contends the trial court erred in awarding plaintiff his costs, expenses, and prejudgment interest, objecting to "*any* amounts awarded as against [defendant] that exceed the amounts paid by the consumer under the contract." These items were not at issue in *Pulliam*. However, the rationale described in *Pulliam,* and that we adopt here, likewise supports the availability of costs and expenses to a plaintiff who prevails on a claim based on the holder rule. (See also *Lafferty, supra,* 25 Cal.App.5th at p. 415 [concluding costs of suit under Code of Civil Procedure section 1032, subdivision (b), "are not curtailed by the Holder Rule"].)

We likewise agree with the *Lafferty* court that prejudgment interest is available to plaintiff. Civil Code section 3287, subdivision (a) states that "[a] person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that

---

that the Holder Rule does not limit recovery of attorneys' fees and costs when state law authorizes awards against a holder," and "whether costs and attorneys' fees may be awarded against the holder of the credit contract is determined by the relevant law governing costs and fees. Nothing in the Holder Rule states that application of such laws to holders is inconsistent with Section 5 of the FTC Act or that holders should be wholly or partially exempt from these laws." (FTC, Commission Statement on the Holder Rule and Attorneys' Fees and Costs (Jan. 18, 2022), pp. 1 & 2, fn. omitted, at <https://www.ftc.gov/policy/advisory-opinions> [as of Jan. 28, 2022] archived at <https://perma.cc/54G3-2F5Q>.)

11

day . . . ." As *Lafferty* concludes, "Civil Code section 3287 applies to every person entitled to recover damages—without reference to the underlying cause(s) of action for which damages are awarded." (*Lafferty, supra,* 25 Cal.App.5th at p. 416; *ibid.* ["the limitation on recovery under the Holder Rule cause of action does not affect entitlement to prejudgment interest"].)

## DISPOSITION

The judgment is affirmed. Plaintiff shall recover his costs on appeal.

GRIMES, Acting P. J.

WE CONCUR:

WILEY, J.

HARUTUNIAN, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12